Williams, Judge,
delivered the opinion of the court:
The plaintiff, on March 30, 1925, entered into a contract with the United States for the reconditioning of the United States Coast Guard Cutter Manning.
The contract provided that the plaintiff should be paid for the work as follows:
General hull work_ $104, 000. 00
Outside plating-per pound— .35
Outside planking-per board ft_ .30
Refitting bolts-per bolt_ .25
Furnishing and fitting new bolts-do_ 1.25
Lay days-per day— 50.00
General machinery work-28, 446. 00
Renewal of boiler tubes_per tube_ 8.00
Upon the completion of the work it appeared that the plaintiff had expended in reconditioning the vessel $92,-140.56 in excess of the amount it had received from the Government for the work. In addition to this direct loss it claimed a further loss of $13,558.46 for interest paid upon money which it had borrowed to supply the difference between the cost of the work and the amount it had received therefor.
*476 Tbe plaintiff made application to Congress for relief and its claim bas been referred to this court bj the special act of May 29, 1928, set out in finding II. The act direct-s the court to determine the following facts incident to the plaintiff’s claim:
(a) Plaintiff’s claim for any service, material, or labor furnished or supplied the United States or on account of which it sustained a loss and for which it was not adequately paid,
(b) To what extent, if any, plaintiff furnished services, material, or labor beyond the requirements of its contract to recondition,
(c) Whether plaintiff furnished any service, material, or labor or was caused loss through no fault of its own, and the amount which the United States benefited thereby, or for which its officers or agents were responsible.
The subject matter of the bill of reference, being a claim founded upon a contract with the Government of the United States, falls within the general jurisdiction of the court, and is a matter upon which the court has jurisdiction to enter judgment. It is necessary, therefore, for us to consider and determine whether the facts as found constitute a legal claim against the United States, and to enter judgment thereon.
The plaintiff contends that the loss sustained by it was due to the following causes:
“ 1. The requirement to install in the hull work 220,000 pounds of steel, when its estimate, based upon plans, specifications, and visible condition of the vessel, indicated this work could be accomplished with the installation of 70,000 pounds.
“ 2. Decisions of defendant’s inspectors requiring contractor to build completely new equipment, joiner work, furniture, and furnish new fixtures and appliances when specifications provided same should be reconditioned or repaired.
“ 3. Decisions of defendant’s inspectors that certain work required by them to be performed was within the contractual obligation of contractor, when, in fact, such work was outside of and beyond the contract.”
As to the plaintiff’s contention that it was required to install in the hull work of the vessel steel greatly in excess *477 of the amount it estimated would be required for that work, it is only necessary to point out that the Government made. no representation as to the amount of steel the reconditioning of the hull would require. Prior to the submission of its bid plaintiff was furnished a copy of the plans and sped-. fications under which the work was to be done. These plans and' specifications, which were incorporated in the contract and are a part of it, set out specifically the nature and extent. of the work contemplated. The pertinent provisions having reference to the hull and fittings are set out in finding - IV, and need not be restated here in their entirety. Atten-. tion, however, is directed to the statement in the specifica-. tions as to the work required in the reconditioning of the. hull:
“ Structure. — In general hull structure will be reneived where 30% to 40% deterioration has occurred. Plates aaúII be drilled as designated by the inspector and outside planking replaced as directed.” No representation is made as to , the percentage of hull structure to be renewed, or the., amount of steel required for that purpose. New steel was. to be supplied where 30% or 40% deterioration had occurred, to be determined by drillings as designated by the., inspector.
The specifications further stated:
“ The Harming is now at the Coast Guard depot, South. Baltimore, Md., and full access and opportunity will be afforded representatives of any bidder for an examination of the vessel and for the preparation of estimates and plans.”
The findings disclose that the vessel was docked at the place designated in the specifications from March 16 to,„ March 25,1925, and was available to prospective bidders for. inspection. The plaintiff’s president and other of its employees visited the vessel during this period and made an examination of it for the purpose of preparing estimates on which to submit a bid for the work. The plaintiff’s agents Avere given full access to the vessel and were afforded the opportunity of ascertaining for themselves the condition of the vessel at that time, and the extent and probable cost; *478 of the work and materials required for the reconditioning of the vessel in accordance with the specifications. The plaintiff could not have been misled by the defendant as to the condition of the hull of the vessel, or the amount of steel its reconditioning would require, as no representations were made by the defendant in respect to either of these matters, and nothing in connection with the condition of the vessel was concealed from the plaintiff’s representatives at the time they inspected it. The plaintiff, therefore, when it made its estimate of the amount of steel the reconditioning of the hull would require, knew as much about the condition of the hull, or at least was afforded the opportunity to know as much about it as did the agents of the Government having to do with the making of the contract.
Under the circumstances stated the plaintiff submitted its proposal to furnish all the labor and materials, and perform all the work required in reconditioning the hull of the vessel for $104,000. This proposal was accepted and the contract in question was entered into. The contract imposed on the plaintiff the obligation to furnish and install in the hull of the vessel whatever amount of steel might be required to recondition it in accordance with the specifications, for the fixed price of $104,000. The fact that the plaintiff’s representatives underestimated the amount of steel necessary for reconditioning the hull, and that it thereby sustained a loss, does not release the plaintiff from its obligation to perform the work at the price fixed in the contract. The plaintiff has been paid the contract price for the hull work and has no legal claim against the Government for anything in excess of that amount.
In the petition the plaintiff sets out 57 items, including the item for excess steel in the hull work, upon which it claims a loss aggregating $113,197.13. It contends that these 57 items were all in excess of and beyond its contract obligations; that it was required to furnish and install them by the defendant’s officer in charge of the work, and that it did so against its protest and under coercion. It is contended, particularly, that it was required to build completely new *479 equipment, joiner work and furniture, and furnish new fixtures and appliances which the specifications required should only be reconditioned or repaired.
It is not possible without unduly extending the opinion to enumerate or to discuss in detail these several items, nor do we deem it necessary to do so. We have given careful consideration to the plaintiff’s contentions as to these items and the evidence offered in their support and have found that the work performed and the material furnished by the plaintiff in respect to each of them were required by the contract plans and specifications, and that the plaintiff performed no service and furnished no material in connection with them beyond the requirements of the contract. However, in the j absence of a finding that the work performed and material) furnished by the plaintiff in connection with these items 4 come within its contract obligations, the decision of the contracting officer that they did fall within the requirements of the contract would not, under the facts and circumstances shown, be subject to review by the court.
The contract provides:
“ARTICLE 21. ADJUSTMENT OP CLAIMS AND DISPUTES.(a) Except as otherwise specifically provided in this contract, all claims, doubts, and disputes shall be decided by the contracting officer and the contractor shall promptly proceed with the work under such decision.
“ (b) The decision of the contracting officer shall be final and conclusive except as to the element of time and the financial consideration involved, and, unless within twenty days after such decision the contractor applies in writing, through the contracting officer, to the head of the department concerned for a review of the decision as to the element of time and the financial consideration involved, the decision of the contracting officer shall also be final and conclusive as to the questions involved in these elements.
“(c) The head of the department shall promptly render his decision in writing. * * * His decision, when rendered, shall be final and conclusive and carried out by the parties as within the contemplation of this contract, unless within thirty days after such decision the contractor shall give written notice to the head of the department of his intention to take appropriate action to determine his legal rights involved in such decision.”
*480 The rule is well established that it is competent for parties to a contract of the nature of the one here involved, to make it a term of the contract that the decision of an engineer or other officer of all or specified matters of dispute-that may arise during the performance of the work shall be-final and conclusive, and that in the absence of fraud or-mistake so gross as to necessarily imply bad faith such decision will not be subject to the revisory power of the courts. McLaughlin & Co. v. United States, 37 C.Cls. 150; Pacific Hardware & Steel Co. v. United States, 49 C.Cls. 827; United States v. Gleason, 175 U.S. 588. The contract in question made the decision of the contracting officer as-to all claims, doubts, and disputes final and conclusive,, except as to the element of time and financial consideration involved, and final and conclusive as to those matters also,, unless the contractor within twenty days- after- such decision made application in writing to the head of the department, for a review of contracting officer’s decision-.. The senior-inspector of the Coast Guard, representing the contracting officer, decided all disputes relating to the- items involved in the plaintiff’s claim as they arose during, the progress of the work. The plaintiff at no time made application to the head of the department for a review of any decision made-by the inspector, and in each instance, without protest, proceeded with the work in compliance with such decision. There is no allegation or proof of fraud,, or such gross mistake on the part of the inspector- as would imply bad faith on his part in any decision made by him. Under the authorities cited his decisions are final and conclusive and are not subject to review by the court.
The plaintiff has been paid the contract price for all labor and materials furnished by it in the reconditioning of the Manning and has no legal or equitable claim- against the United States growing out of the contract.
The petition is therefore dismissed. It is so- ordered.
Whaley, Judge; LittletoN, Judge; GreeN,. Judge, and.. Booth, Chief Justice, concur.