UNITED STATES *v.* CARLO BIANCHI & CO., INC.

No. 529.   Argued April 29, 1963.—Decided June 3, 1963.

157 Ct. Cl. ——, judgment vacated and cause remanded.

*David L. Rose* argued the cause for the United States. With him on the brief were *Solicitor General Cox, Acting Assistant Attorney General Douglas, Bruce J. Terris* and *Morton Hollander.*

*William H. Matthews* argued the cause and filed a brief for respondent.

*Glen A. Wilkinson, Jesse E. Baskette* and *Paul M. Rhodes* filed a brief for the Bar Association of the District of Columbia, as *amicus curiae,* urging affirmance.

MR. JUSTICE HARLAN delivered the opinion of the Court.

This case involves the interpretation and application of the "Wunderlich Act," 68 Stat. 81, 41 U. S. C. §§ 321–322,[1]

[1] 41 U. S. C. § 321 provides: "No provision of any contract entered into by the United States, relating to the finality or conclusiveness of any decision of the head of any department or agency or his duly authorized representative or board in a dispute involving a question arising under such contract, shall be pleaded in any suit now filed or to be filed as limiting judicial review of any such decision to cases where fraud by such official or his said representative or board is

an Act designed to permit judicial review of decisions made by federal departments and agencies under standard "disputes" clauses [2] in government contracts. The issue before us is whether, in a suit governed by this statute, the court is restricted to a review of the administrative record on issues of fact submitted to administrative determination or is free to receive new evidence on such issues.

In 1946, the respondent, Carlo Bianchi and Company, entered into a contract with the Army Corps of Engineers for the construction of a flood-control dam. Included in the work to be performed was the construction of a 710-foot tunnel, designed for the diversion of water, to be lined with concrete and to have permanent steel supports as protection for a 50-foot section at either end. The specifications did not call for such permanent supports throughout the remainder of the tunnel but only for "[t]emporary tunnel protection . . . where required for safety of the workmen." The contract contained a standard "changed conditions" clause, authorizing the contracting officer to provide for an increase in cost if the contractor encountered subsurface conditions materially different from those indicated in the contract or to be rea-

---

alleged: *Provided, however,* That any such decision shall be final and conclusive unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

41 U. S. C. § 322 provides: "No Government contract shall contain a provision making final on a question of law the decision of any administrative official, representative, or board."

[2] The standard "disputes" clause, as included in the contract involved in this case, provides: "Except as otherwise specifically provided in this contract, all disputes concerning questions of fact arising under this contract shall be decided by the contracting officer subject to written appeal by the contractor within 30 days to the head of the department concerned or his duly authorized representative, whose decision shall be final and conclusive upon the parties thereto. In the meantime the contractor shall diligently proceed with the work as directed."

sonably anticipated, and also contained the standard "disputes" clause quoted, *supra,* note 2.

After the tunnel had been drilled by a subcontractor, but before it was lined with concrete, the respondent took the position that unforeseen conditions created extreme hazards for workmen, requiring permanent protection throughout the tunnel, and that it should be compensated for installing such protection. The contracting officer decided that compensation would not be made, and pursuant to the "disputes" clause a timely appeal from his decision was taken to the Board of Claims and Appeals of the Corps of Engineers. While the appeal was pending, respondent installed the tunnel supports and completed work on the tunnel.

An adversary hearing was held before the Board, at which a record was made and each side offered its evidence and had an opportunity for cross-examination. In December 1948, the Board issued a decision against the contractor, resolving certain conflicts in the evidence in favor of the Government and holding in substance that there were no unanticipated or unforeseen conditions requiring the use of permanent steel protection throughout the tunnel.

Almost six years later, in December 1954, respondent brought the present action for breach of contract in the Court of Claims, seeking substantial damages and alleging that the decisions of the contracting officer and the Board were "capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or were not supported by substantial evidence." At a hearing before a Commissioner in 1956, the Government took the position that on the question whether the Board's decision was entitled to be considered final, no evidence was admissible except the record before the Board. But the Commissioner received evidence *de novo,* including, over government objection, a substantial amount of evidence that had not

been before the Board. He subsequently made extensive findings of fact and concluded that the respondent was entitled to recover.

In an opinion issued in January 1959, the Court of Claims accepted the Commissioner's findings and conclusions, ruling that "on consideration of all the evidence, the contracting officer's decision [as affirmed by the Board] cannot be said to have substantial support," and thus "does not have finality." 144 Ct. Cl. 500, 506, 169 F. Supp. 514, 517. On the question whether it was limited in its consideration to the evidence before the Board, the court stated:

> "In our opinion in *Volentine and Littleton* v. *United States,* 136 C. Cls. 638, holding that the trial in this court should not be limited to the record made before the contracting agency, but should be *de novo,* we recognized that there were logical weaknesses in our position. We concluded, however, that the intent of Congress in enacting the Wunderlich Act was in accord with our conclusion, and we adhere to that conclusion in this case." *Ibid.*

After receiving additional evidence on damages, the court entered judgment for respondent in the amount of $149,617.36. 157 Ct. Cl. ——. We granted certiorari, 371 U. S. 939, to resolve a conflict among the lower courts [3] on the important question of the kind of judicial proceeding to be afforded in cases governed by the Wunderlich Act.

---

[3] With the decision below, compare, *e. g., Allied Paint & Color Works, Inc.,* v. *United States,* 309 F. 2d 133 (C. A. 2d Cir.); *Wells & Wells, Inc.,* v. *United States,* 269 F. 2d 412 (C. A. 8th Cir.). See also *Mann Chemical Laboratories, Inc.,* v. *United States,* 174 F. Supp. 563 (D. C. D. Mass.). In suits involving less than $10,000, the District Courts have concurrent jurisdiction with the Court of Claims over claims arising under government contracts, 28 U. S. C. § 1346 (a) (2), and in suits by the Government under such contracts have exclusive jurisdiction, see 28 U. S. C. § 1345.

## I.

The jurisdiction of the Court of Claims in the present case is conferred by 28 U. S. C. § 1491, since this is a suit for judgment against the United States "founded" upon an "express or implied contract with the United States." Ordinarily, when questions of fact arise in such suits, the function of the court is to receive evidence and to make appropriate findings as to the facts in dispute. But this Court long ago upheld the validity of clauses in government contracts delegating to a government employee the authority to make determinations of disputed questions of fact, and required such determinations to be given conclusive effect in any subsequent suit in the absence of fraud or gross mistake implying fraud or bad faith. See *Kihlberg* v. *United States,* 97 U. S. 398; *Ripley* v. *United States,* 223 U. S. 695. Thus the function of the Court of Claims in matters governed by "disputes" clauses was in effect to give an extremely limited review of the administrative decision, and although the scope of review was somewhat expanded by that court over the years,[4] it was expressly restricted in *United States* v. *Wunderlich,* 342 U. S. 98, 100, to determining whether or not the departmental decision had been founded on *fraud, i. e.,* "conscious wrongdoing, an intention to cheat or be dishonest."

The *Wunderlich* decision, rendered over strong dissents, evoked considerable effort to obtain legislation expanding the scope of review beyond questions of fraud. A number of bills were introduced in the Eighty-second and Eighty-third Congresses; hearings were held in the Senate[5] and House of Representatives;[6] and the result-

---

[4] See, *e. g., Southern Shipyard Corp.* v. *United States,* 76 Ct. Cl. 468; *Needles* v. *United States,* 101 Ct. Cl. 535.

[5] Hearings before a Subcommittee of the Senate Judiciary Committee on S. 2487, 82d Cong., 2d Sess.

[6] Hearings before the House Judiciary Committee on H. R. 1839 *et al.,* 83d Cong., 1st Sess.

ing statute known as the "Wunderlich Act" was ultimately approved by both Houses in 1954. This statute, quoted in full in note 1, *supra,* is entitled an Act "To permit review of decisions of the heads of departments . . . involving questions arising under Government contracts," and provides in substance that a departmental decision on a question of fact rendered pursuant to a "disputes" clause shall be final and conclusive in accordance with the provisions of the contract

> "unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

Respondent has not argued in this Court that the underlying controversy in the present suit is beyond the scope of the "disputes" clause in the contract or that it is not governed by the quoted language in the Wunderlich Act. Thus the sole issue, as stated *supra,* p. 710, is whether the Court of Claims is limited to the administrative record with respect to that controversy or is free to take new evidence. In considering this issue, we put to one side questions of fraud, which are not involved in this case, which normally require the receipt of evidence outside the administrative record for their resolution, and which could be considered in judicial proceedings even prior to the enactment of the statute.

It is our conclusion that, apart from questions of fraud, determination of the finality to be attached to a departmental decision on a question arising under a "disputes" clause must rest solely on consideration of the record before the department. This conclusion is based both on the language of the statute and on its legislative history.

1. With respect to the language used, we note that the statute is designated as an Act "To permit review" and that the reviewing function is one ordinarily limited to consideration of the decision of the agency or court below

and of the evidence on which it was based. Indeed, in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, this Court has held that consideration is to be confined to the administrative record and that no *de novo* proceeding may be held. *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420; *National Broadcasting Co.* v. *United States,* 319 U. S. 190, 227. And of course, as shown by the *Tagg Bros.* and *NBC* cases themselves, the function of reviewing an administrative decision can be and frequently is performed by a court of original jurisdiction as well as by an appellate tribunal.

Moreover, the standards of review adopted in the Wunderlich Act—"arbitrary," "capricious," and "not supported by substantial evidence"—have frequently been used by Congress and have consistently been associated with a review limited to the administrative record.[7] The term "substantial evidence" in particular has become a term of art to describe the basis on which an administrative record is to be judged by a reviewing court. This standard goes to the reasonableness of what the agency did *on the basis of the evidence before it,* for a decision may be supported by substantial evidence even though it could be refuted by other evidence that was not presented to the decision-making body.

2. The legislative history supports our conclusion that the language used in the Act should be given its customary meaning. It is true that several witnesses representing contractors explained the purpose of the proposed legislation as restoring rights the contractors had before *Wunderlich,*[8] and that it had apparently been the prac-

---

[7] See, *e. g.,* § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U. S. C. § 1009; § 10 of the Fair Labor Standards Act, 52 Stat. 1065, as amended, 29 U. S. C. § 210; § 10 of the National Labor Relations Act, 49 Stat. 453, as amended, 29 U. S. C. § 160.

[8] See, *e. g.,* Senate Hearings, *supra,* note 5, at 32–35, 57–58.

tice of the Court of Claims to receive evidence on matters covered by "disputes" clauses.[9]   But it seems clear in context that these witnesses meant only that the *standards* of review should cover more than conscious fraud, as the Court of Claims had assumed prior to *Wunderlich.*  Indeed with respect to the *procedural* significance of the substantial evidence test, a leading contractor's representative stated that it would

> "result in these various departments and agencies feeling that they will have to produce their witnesses at these hearings and permit the contractor to examine them, in order to have in the record some substantial evidence to support their decisions when they go up on appeal to the court." [10]

The House Report recommending the bill ultimately enacted leaves little doubt that the review intended was one confined to the administrative record.  H. R. Rep. No. 1380, 83d Cong., 2d Sess.   The explicit references to the Administrative Procedure Act, 60 Stat. 243, 5 U. S. C. § 1009, and to this Court's discussion of the standards of review in *Consolidated Edison Co.* v. *Labor Board,* 305 U. S. 197, 229, are only the least indications.   Even more significant is the Committee's view, echoing that of the witness quoted above, that the standards proposed would remedy the practice in many departments of failing to acquaint the contractor with the evidence in support of the Government's position:

> "It is believed that if the standard of substantial evidence is adopted this condition will be corrected and

---

[9] The Government, citing *Needles* v. *United States,* 101 Ct. Cl. 535, 606–607, suggests that although the Court of Claims did receive "live" evidence on such matters, it may not have "consciously considered evidence not presented and not available to the administrative officers making the final administrative decision."

[10] House Hearings, *supra,* note 6, at 79–80.

"that the records of hearing officers will hereafter contain all of the testimony and evidence upon which they have relied in making their decisions. It would not be possible to justify the retention of the finality clauses in Government contracts unless the hearing procedures were conducted in such a way as to require each party to present openly its side of the controversy and afford an opportunity of rebuttal." H. R. Rep. No. 1380, 83d Cong., 2d Sess. 5.

This sound and clearly expressed purpose would be frustrated if either side were free to withhold evidence at the administrative level and then to introduce it in a judicial proceeding. Moreover, the consequence of such a procedure would in many instances be a needless duplication of evidentiary hearings and a heavy additional burden in the time and expense required to bring litigation to an end. Thus in the present case judicial proceedings began in 1954, almost six years after completion of the departmental proceedings, and a final decision on the issue of liability was not rendered until 1959. This is surely delay at its worst, and we would be loath to condone any procedure under which the need for expeditious resolution would be so ill-served. Here the procedure is clearly inconsistent with the legislative directive.

It is contended that the Court of Claims has no power to remand a case such as this to the department concerned, cf. *United States* v. *Jones,* 336 U. S. 641, 670–671, and thus if the administrative record is defective or inadequate, or reveals the commission of some prejudicial error, the court can only hold an evidentiary hearing and proceed to judgment. There are, we believe, two answers to this contention. *First,* there would undoubtedly be situations in which the court would be warranted, on the basis of the administrative record, in granting judgment for the contractor without the need for further administrative action. *Second,* in situations where the court

believed that the existing record did not warrant such a course, but that the departmental determination could not be sustained under the standards laid down by Congress, we see no reason why the court could not stay its own proceedings pending some further action before the agency involved. Cf. *Pennsylvania R. Co.* v. *United States,* 363 U. S. 202. Such a stay would certainly be justified where the department had failed to make adequate provision for a record that could be subjected to judicial scrutiny, for it was clearly part of the legislative purpose to achieve uniformity in this respect. And in any case in which the department failed to remedy the particular substantive or procedural defect or inadequacy, the sanction of judgment for the contractor would always be available to the court.

## II.

In its argument here, the Government has urged that if judicial review is confined to the administrative record, it must be concluded that the Board's determination is supported by substantial evidence and thus is entitled to finality under the Wunderlich Act. The respondent, on the other hand, contends that there were several irregularities in the Board's procedures that preclude giving its determination conclusive effect.

Neither of these matters is properly embraced within our grant of certiorari, and we are therefore not called upon to pass on them. We hold only that in its consideration of matters within the scope of the "disputes" clause in the present case, the Court of Claims is confined to review of the administrative record under the standards in the Wunderlich Act and may not receive new evidence. We therefore vacate the judgment below and remand the case for further proceedings in conformity with this opinion.

*It is so ordered.*

Mr. Justice Douglas, with whom Mr. Justice Stewart concurs, dissenting.

The petition to the Court of Claims alleged that changed subsurface conditions required respondent to install permanent tunnel protection by the use of steel arch ribs and steel liner plates, that that work delayed completion of the project and increased its cost, for which respondent should be reimbursed, and that the decision of the Corps of Engineers in rejecting the claim was "capricious" or "arbitrary."

The Wunderlich Act, 41 U. S. C. § 321, makes "final and conclusive" any decision by a federal agency under customary disputes clauses in government contracts with several exceptions—"unless the same is fraudulent or capricious or arbitrary or so grossly erroneous as necessarily to imply bad faith, or is not supported by substantial evidence."

I think the decision was "capricious or arbitrary" because evidence was considered by the Appeals Board in making its decision which the claimant did not see and which he had no opportunity to refute. I therefore think that a *de novo* hearing was permissible before the Court of Claims.

The Board found that respondent at the start should have used temporary protection against fall-ins and that, had it done so, permanent tunnel protection would not have been required. In February 1948, before the hearing, a letter from the Acting District Engineer to the Chief of Engineers reported a conversation the Corps' resident engineer for this project had had with an expert from New York's Bureau of Mines. The only inference that could be drawn from that report was that the expert believed that the tunnel was in safe condition shortly after it was bored and that its later unsafe condition was caused by the fact that respondent "had not had the fore-

sight to gunite the exposed tunnel roof with cement as the excavation progressed to seal it against air slacking [*sic*] . . . ." Somehow, in a manner not disclosed by the record, this letter came into the hands of the Appeal Board and was considered by it before a decision was rendered on the appeal.[*]

After the decision respondent learned of this expert's alleged statements and called him as a witness at the hearing before the Court of Claims, where he testified on the basis of his inspection that permanent, not temporary, protection against fall-ins was necessary from the beginning. As respects the guniting of the tunnel, one of the Government's own witnesses testified at the hearing before the Court of Claims that it would have served no useful purpose.

This issue—whether only temporary protection was needed—was one of the main issues in the case. When the agency making the decision relies on evidence that the claimant has no chance to refute, the hearing becomes infected with a procedure that lacks that fundamental fairness the citizen expects from his Government. Cf. *Willner* v. *Committee on Character & Fitness, ante,* p. 96; *Gonzales* v. *United States,* 348 U. S. 407; *Morgan* v. *United States,* 304 U. S. 1.

This irregularity points up what Judge Madden, writing for the Court of Claims, said in *Volentine & Littleton* v. *United States,* 136 Ct. Cl. 638, 641–642, 145 F. Supp. 952, 954:

> ". . . the so-called 'administrative record' is in many cases a mythical entity. There is no statutory provision for these administrative decisions or for

---

[*]The letter also contained a statement to the effect that only $9,000 was involved in the appeal. This figure was used in the Board's opinion, but it was nowhere mentioned in the hearing or record before the Board. In fact the figure was grossly inaccurate.

any procedure in making them. The head of the department may make the decision on appeal personally or may entrust anyone else to make it for him. Whoever makes it has no power to put witnesses under oath or to compel the attendance of witnesses or the production of documents. There may or may not be a transcript of the oral testimony. The deciding officer may, and even in the departments maintaining the most formal procedures, does, search out and consult other documents which, it occurs to him, would be enlightening, and without regard to the presence or absence of the claimant."

We are dealing, in other words, with subnormal administrative procedures. While the regulations governing hearings before the Corps of Engineers are published and provide many protective features (33 CFR § 210.4), they lack some of the safeguards normally accorded claimants in administrative proceedings. Thus they are specifically exempt from § 5 and from § 7 of the Administrative Procedure Act. 5 U. S. C. §§ 1004, 1006. The exemption from § 7 is highlighted in this case. That section provides in part:

"Every party shall have the right to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and *to conduct such cross-examination as may be required for a full and true disclosure of the facts.*" (Emphasis supplied.)

That provision, if applicable, would have made reliance by the Board on the *ex parte* hearsay statement of this outside expert reversible error. Lax procedural standards may at times do no harm. But where, as here, opinion evidence on the vital issue in the case was obtained *ex parte* and where that evidence is shown to have been false, the conclusion that the decision was "capricious" or "arbitrary" seems to me unavoidable.

A remand to the agency to determine whether the agency's decision is "capricious" or "arbitrary" seems obviously inappropriate, since it is the court, not the agency, that should determine that question. Since these administrative proceedings are exempt from the protective provisions of § 7 of the Administrative Procedure Act, there is no procedure whereby a contractor can determine whether the agency's decision rested on the testimony of "faceless" or secret witnesses, as in this case. Like the case where a contractor seeks reformation of his contract (cf. *Blake Constr. Co.* v. *United States,* 111 U. S. App. D. C. 271, 296 F. 2d 393), the only place he can get the hearing Congress intended him to have on whether the decision was "capricious" or "arbitrary" is in the courts.