Per Curiam:
This case is before the court on plaintiff’s motions for summary judgment, or, in the alternative, to sus *923 pend proceedings pending further action by. the Armed Services Board of Contract Appeals, and defendant’s cross-motion for summary judgment, having been submitted on the briefs of the parties and oral argument of counsel.
The plaintiff is a small Maryland corporation, engaged primarily in the business of tree surgery.[1]
In February 1959, it undertook a fixed-price contract with the Department of the Air Force to “clear and grub 17.02 acres of ground on the golf course on the Andrews Air Force Base.” [2]
The contract did not include “Changed Conditions” or “Suspension of Work” clauses of the sort commonly used in Standard Form 23 Construction Contracts. In essence it was an agreement to do a specified job within a specified time for a specified price.
It did contain a “Changes” clause under which the Contracting Officer might, by a written order, require additional work, or change the time required for performance, and might make equitable adjustments in the contract price in case such changes caused an increase in the cost of performance.
It included also a “Default” clause that excused the contractor from liability for excess costs in case of a termination for default resulting from causes beyond the contractor’s control.[3]
The contract also contained a typical “Disputes” clause making administrative decisions as to disputed questions of *924 fact (but not administrative decisions as to questions of law) conclusive unless found by a court to be fraudulent, capricious, arbitrary, so grossly erroneous as necessarily to imply bad faith, or not supported by substantial evidence.[4]
According to the terms of the contract, the job was to be finished late in April 1959, 60 days after the plaintiff received the notice to proceed on February 25,1959.
When the work commenced, the ground was frozen. The operation proceeded well until sometime in March. Thereafter the work was delayed. Initially, through March, April, and part of May, the delay was caused by thawing and rains which created a condition in the soil of the work area that impeded, and, at times, stopped the operation of the bulldozer the plaintiff was using and, when the bulldozer could be operated, impaired its effectiveness as a means of removing standing vegetation and extracting stumps and roots.[5]
Later, after the ground had dried, additional delays were caused by difficulties in getting equipment back on the job and by the necessity of removing trees belatedly designated for removal by the Government’s representatives.
The time for performance was repeatedly extended, and the work was finally completed and accepted in October 1959, about 6 months after the original completion date. The plaintiff was paid the full contract price.
*925 The plaintiff claims compensation additional to the contract price, however, on the ground that it was required by the defendant’s representatives to do more than it contracted to do.
The amounts it claims, and the alleged bases for them are:
1. Additional costs resulting from the defendant’s insistence that the plaintiff continue work when the work area had become a “quagmire”___$2,861.75
2. Costs of renting a “chipper” to dispose of material cleared from the area ($375) and sharpening chipper blades ($20), both necessitated by refusal of the defendant’s representatives to permit trucks to cross wet fairways to reach designated disposal areas_ 395.00
3. Cost of using a “brush hog,” in lieu of the bulldozer, at the “suggestion” of a Government representative, in an unsuccessful effort to clear and grub the work area when the bulldozer’s effectiveness was impaired by wet ground_ 80. 00
4. Cost of partially leveling a mound of earth in the work area_ 300. 00
5. Cost of removal of trees, belatedly designated by Government representatives for removal_ 408. 00
6. Cost of clearing and grubbing 1.68 acres in excess of the area covered by the contract 846.45
4,891.26
7. Profit at 10 percent on the foregoing operations_ 489.13
5,380. 39
Before it filed this suit, the plaintiff asserted its claims successively to the General Accounting Office, the Contracting Officer, and the Armed Services Board of Contract Appeals.
On April 4, 1960, the General Accounting Office, by a “settlement certificate” (No. Z-2053811), denied the plaintiff’s claims, as they were presented to it.
*926 By a letter dated May 20, 1960, tbe Contracting Officer refused to exercise jurisdiction on the ground that the Comptroller General’s action foreclosed authority for further administrative decision on the claim.
■ The Armed Services Board of Contract Appeals acknowledged that the Comptroller' General’s decision limited its jurisdiction to some extent,[6] but concluded that certain questions concerning the plaintiff’s claim had not been squarely presented to the General Accounting Office. It received and considered such evidence as the plaintiff offered at the two hearings before the Board, and decided on the merits all substantially contested questions affecting the plaintiff’s claims.[7]
The only question the Board specifically identified as beyond its jurisdiction was whether rain had been abnormally heavy in the spring and late winter of 1959. The Board held that the plaintiff had voluntarily submitted that issue to the General Accounting Office, and that the Comptroller General had conclusively decided it in the settlement certificate of April 4,1960.
The Board accepted, however, the plaintiff’s contention that during those months when the original terms of the contract required the work to be done, the work area became a “quagmire” and caused bulldozer operation to be slow, costly, and, in some places, impossible. There is no indication that the plaintiff now quarrels with the Board’s concurrence in the Comptroller General’s decision that the quantity of rain which contributed to. that condition was less than normal in March 1959 and slightly more than normal in April.
Having defined the issues it deemed itself barred from considering so narrowly as to leave itself free to decide "all seriously controverted issues affecting the plaintiff’s, claim, the Board received the evidence the plaintiff offered and rendered a comprehensive decision on the merits of each item of-its claim. ■ • .
*927 On three items, it sustained the plaintiff’s appeal and allowed recovery, including 10 percent profit on each. On the other three, it denied recovery.
The additional amounts allowed by the Board were as follows:
2.[8] $375 as cost of rental of a “chipper,” $20 as cost of sharpening the chipper blades, and $39.50 as 10 percent profit on the total- $434. 50
5. Cost of removing trees, belatedly designated by the Government’s representatives for removal, consisting of $100 for bulldozing, and $160 for 40 hours of extra hand labor at $4 per hour, plus $26 as 10 percent profit_ 286.00
6. $831.33 as cost of clearing and grubbing 1.68 acres additional to the acreage required by the terms of the contract, plus $83.13 as profit at 10 percent_ 914.46
1,634. 96
In considering the other three items of the plaintiff’s claim, each of which it denied, the Board rejected no significant evidence proffered by the plaintiff. Its opinions indicaté that it gave careful and sympathetic consideration to all the evidence the plaintiff offered in support of each item of its claim.
In seeking to establish that-it is entitled to be reimbursed for $2,534.68 of costs in excess of the contract price that resulted from its inability to clear and grub the work area while the ground was softened into a “quagmire” by thawing and rain, the plaintiff produced evidence that the soil of the area became unstable when its water content rose above a certain point; that, when it did, operation of a bulldozer was slow, costly, and, at times, impossible; that, under the conditions that prevailed in the spring of 1959, the bulldozer was ineffective, either to remove growing vegetation or to grub out roots; and that, until these difficulties arose, the plaintiff was unaware of the characteristics of the soil, in the *928 work area that caused them. The Board rejected none of such evidence and appears to have regarded these facts as proved.
The evidence also showed, however, that soil of the kind that caused the difficulties was not unusual in the vicinity of the work area, and that the plaintiff, before bidding, could have discovered its characteristics through readily available sources, could have estimated the effect of such characteristics on the cost of doing the job in the spring when rain was likely, and could have fixed a price that would have covered the costs reasonably to be expected.
The Board held that, in these circumstances, the plaintiff, having failed to inform itself about the characteristics of the soil and, having contracted to do the work, within a specified time, during the spring when the soil was likely to be wet, for a price that took no account of difficulties from the wet soil, which the plaintiff could and should have anticipated, is not entitled to be reimbursed for excess costs caused by wet soil in the work area.
The Board held further that the contract’s “Default” provisions relieve contractors of liability for excess costs arising from circumstances beyond their control only when the contract is terminated, whereas, the contract was not terminated in this case, and, in addition, that the circumstances that delayed the plaintiff’s performance were not of the sort embraced by the contract’s “Default” provisions.
On the facts in the record, the Board’s decision on this issue appears to have been plainly right.
The plaintiff does not contend that the Board improperly excluded, or failed to consider any evidence it offered at the Board hearing.
It does complain, however, in its alternative motion, that the Board’s decision on the defendant’s “Motion to Dismiss” (ASBCA No. 6456, July 18, 1960) precluded it from attempting to prove, at the hearing before the Board—
1. That bulldozers, or similar machines, afford the only economical, practical way to clear an area of the size covered by the contract, and
2. That, according to the custom of the bulldozer trade, no attempt is ordinarily made to operate bulldozers on ground that will not support them.
*929 Accordingly, it says that the court should now suspend this proceeding to enable it to submit proof of these facts to the Board, or itself accept such proof de novo, or, preferably, treat these facts as self-evident.
But whether bulldozers are the only practical way to clear a substantial area and whether it is customary not to attempt to operate bulldozers on wet ground that will not support them are questions wholly immaterial to a determination whether the plaintiff is entitled to recover the amount by which its costs exceeded the price for which it had undertaken to clear the work area under this contract.
The Board found, on the basis of substantial evidence, that the plaintiff could have anticipated the conditions that made the operation of the bulldozer impractical during the specified period of performance and concluded that, inasmuch as the plaintiff had failed to do so, but, instead, fixed a price that took no account of the extra costs that such conditions might engender, it had established no legal right under this contract .to recover such extra costs when they occurred. The additional facts the plaintiff now wishes to prove have no significant bearing on the correctness of that decision.
Moreover, the only issue obviously foreclosed by the Board’s decision on the motion to dismiss was whether rainfall was greater or less than normal in the spring of 1959. Nothing in the record of the Board hearings on the merits suggests that the plaintiff ever offered, before the Board, the proof it now proposes to offer, or that the Board would have rejected it if it had been offered. It received and considered all other evidence the plaintiff offered on issues other than the quantity of rain that fell during the period specified for performance.
In addition, it is reasonably clear that the Board proceeded on the assumption, implicit from the record as a whole, that bulldozers are the commonly accepted means of clearing areas of the sort designated in the contract and that their operation is improvidently costly when the work area will not support them, or impairs their capacity to perform their intended function.
The plaintiff’s motions with regard to the so-called “quagmire” claim present no issue concerning the correctness of the *930 Board’s decision with- respect to any disputed question of material fact, and no reason is apparent for granting its alternative motion asking that either the court or the Board receive additional evidence bearing on that claim.
The plaintiff asserts no right to offer additional proof before the court or before the Board concerning its claim of $80 for the cost of using a “brush hog,” in a futile effort to clear and grub part of the work area during the time when the bulldozer could not function effectively. The Board found that the “suggestion” that the brush hog be used was not made by a representative of the defendant authorized to make changes in the requirements of the contract, and, accordingly, was not effective as a change of the contract’s provisions. There is substantial evidence to sustain that finding. The decision that the claim should be denied is correct as a matter of law and the plaintiff1’s motion for summary judgment on this item should- be denied.
There is substantial evidence also to sustain the Board’s decision that the plaintiff did not remove more dirt than was necessary to perform its obligation to clear and gr,ub the work area and to rough grade it as the contract required, and that, accordingly, it is not entitled to $300 it claims for partially leveling a mound, or hill of earth in the work area. The plaintiff asserts no right to offer additional proof on this issue, and its motion for summary judgment on this item of its claim should be denied.
The plaintiff complains that the. Board’s decision with respect to the amount it might recover for removing additional trees, not required under the contract, was based, in part at least, on evidence submitted by the plaintiff to the Contracting Officer in support of its claim, which was available to the Board as a part of the record of the prior administrative consideration of the plaintiff’s claims but which the plaintiff did not formally submit at the hearing. It claims it is entitled to $148 more than the Board, allowed on the basis of evidence it formally introduced at the Board hearing which stated a claim in a larger amount than it had asserted before the Contracting Officer, and which .the plaintiff says was the only evidence on this issue properly before the Board.
*931 The plaintiff does not dispute the authenticity of its submission to the Contracting Officer, but says merely that the Board should-not have considered it because it was not formally proffered at the hearing. ••
The record shows that the Board made clear that it regarded the record of the prior administrative proceedings as a part of the evidence before it. In the circumstances of this case, its consideration of evidence submitted to the Contracting Officer whose decision it was reviewing was proper.
The plaintiff’s motion also complains that the Board’s computation of the amount allowed for clearing an additional 1.68 acres of land, which followed an established formula set out in the Armed Services Procurement Begu-lation, improperly excluded certain items from allowable overhead and attributed the wrong amount to extra work. The plaintiff submits no persuasive reasons for concluding that the Board’s computation was contrary to accepted accounting principles.
The plaintiff also seeks damages of $1,000 for breach of contract on the ground 'that the Contracting Officer and the Board failed to give the plaintiff the full and fair hearing provided for in the “Disputes” clause of the contract. The basis of this claim appears to be that the Board unduly restricted the scope of its hearing in unwarranted deference to the prior decision of the Comptroller General. The plaintiff not only seeks opportunity to prove by additional evidence that its submission to the Comptroller General was not voluntary but also contends that the statutes which provide that settlements made by the General Accounting Office[9] are binding on the Executive Branch of the Government are unconstitutional.
As is apparent from prior statements in this opinion, the Board did not limit its jurisdiction or the scope of its hearing because of the Comptroller General’s decision in a manner which precluded it from considering any issues the plaintiff now contests. Whatever the answer may be to the constitutional question the plaintiff now seeks to raise, it has no significant bearing on this case. Nor is there any reason for allowing proof concerning the voluntary or involuntary *932 nature of the plaintiff’s submission of its claim to the General Accounting Office. The Comptroller General’s decision had no effect on the scope of the Board hearing except with respect to the normality of rainfall in the spring of 1959 — an issue which the plaintiff does not contest.
For the foregoing reasons, the plaintiff’s motions are denied, the defendant’s cross-motion for summary judgment is allowed, and the petition is dismissed.

 The plaintiff had performed, without difficulty, about ten Government contracts, within a period of 20 years. All had related to the care of trees and some had necessitated incidental removal of some trees. None, however, had reguired clearing of trees on a scale that necessitated the use of a bulldozer.

 According to the specifications, “clearing” consisted essentially of cutting up and disposing of all vegetation and rubbish on the areas to be cleared, except for some trees that were to remain. The Government Was to designate which trees should be removed and which should be left standing. “Grubbing,” under the contract, consisted of removing from the work area all stumps, all roots larger than % inch in diameter to a depth of at least 6 inches, and all matted roots — and refilling all holes made in the ground in removing the stumps and root's. • The contract also required the plaintiff, after completing the clearing and grubbing operations, to rough grade the work area to provide uniform slopes without depressions.

 The contract was not terminated for default. It was fully performed after one formal and several tacit extensions of the time for performance.

 The pending motions for summary judgment do not raise directly, any questions concerning the authority of the court, under the decision in United States v. Carlo Bianchi and Co., Inc., 373 U.S. 709 (1963), to receive de novo evidence. They are based on the assertion by both parties that there are no material issues of fact, and seek the court’s decision on questions of law that may be finally dispositive of the controversy, including, with respect to some items of the claims, the question whether, exclusively on the basis of the record before the Board, the Board’s decision was supported by substantial evidence.
The plaintiff’s alternative motion that the case be returned to the Board for the finding of additional facts (or that the court take judicial notice of two practically self-evident facts that the plaintiff did not offer to prove before the Board) is dependent upon the court’s disposition of the primary legal issues raised by the motions for summary judgment. Moreover, as will ■subsequently appear, it is far from clear that the additional facts the plaintiff now proposes to prove are material to the dispositive legal issues raised by ¡the motions for summary judgment.

 Because of the softness and instability of the soil of the work area when It was wet, neither standing plants nor imbedded roots were torn from the ¡ground by the bulldozer. Instead, they were merely depressed when it passed and thereafter returned to approximately their former condition.

 ASBCA No. 6456, July 18, I960 (;On the 'Government’s motion to dismiss).

 ASBCA No. 6456, March 30, 1961 (On the merits). ' ”.
ASBCA No. 7609, January 15, 1962 (On the merits of a question reserved for further hearing).

 The numbers identifying the items on which recovery was allowed are the same as those identifying comparable items in the preceding statement of the components of the plaintiff’s claim.

 31 ms.'C. §§ a, 74.