## ALLEN & WHALEN OF VIRGINIA, INC.

### v.

## The UNITED STATES.

### No. 165-63.

United States Court of Claims.

July 16, 1965.

Joseph G. Dooley, Washington, D. C., attorney of record, for plaintiff. Joseph A. Lynott, Jr., Washington, D. C., of counsel.

Manfred J. Schmidt, Washington, D. C., with whom was Asst. Atty. Gen. John W. Douglas, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

PER CURIAM:

This case was referred pursuant to former Rule 45(a) (now Rule 57(a)) to Trial Commissioner Richard Arens with directions to make findings of fact and recommendations for conclusion of law. On November 20, 1964, the commissioner filed a report reciting therein the controlling facts of the case. Plaintiff elected not to file any exceptions or brief to the commissioner's recommendation and the time for so doing, as provided by the rules, has expired. On June 16, 1965, defendant filed a motion for the adoption of the commissioner's recommended con-

clusion of law. Such facts as are necessary to the decision of the case are found in the commissioner's opinion. Since the court is in agreement with the opinion, findings and recommendation of the trial commissioner, as hereinafter set forth, it hereby adopts the same as the basis for its judgment in this case. Plaintiff is therefore not entitled to recover and its petition is dismissed.

## OPINION OF COMMISSIONER

In September 1959, plaintiff, an electrical contractor, entered into a contract with defendant to install new high-voltage cables which were to replace the then-existing cables at The Pentagon, Arlington, Virginia.

The dispute centers on the location, within the manholes, of the cable splices. After installing the cables, plaintiff redid the installation, under protest, in compliance with the contracting officer's insistence, after certain initial corrections in the work were made, that the cable splices be located in the center of the manholes.

The contract documents did not directly specify the location of the cable splices. Section 4–2 of the specifications required the contract work to be performed in a workmanlike manner and provided that the workmanship should be of the best quality known by the various trades employed. Section 4–3, entitled "Rules and Regulations" provided that certain established standards (insofar as they applied) should be followed the same as if fully set out in the contract. These standards, however, represented minimum requirements and the contractor [plaintiff] was not to be relieved from furnishing and installing higher grades of material and workmanship where specified. The special conditions of the contract provided that, in establishing standards of materials, workmanship, and methods of performance, the contracting officer was to be guided by published preferred recommendations of industry "Associations" or "Institutes," preferred recommendations of the manufacturer of the materi-

al being installed, local building codes, and codes of regulatory bodies. The contract documents further provided that all cables installed in manholes were to be racked around the walls the longest way from entrance to exit and that, unless otherwise required by drawings or specifications, new work and extensions of existing work should correspond in all respects to that to which it connects or to similar-existing work.

After the contracting officer denied plaintiff's claim for additional compensation for the replacement of the cables and splices, plaintiff under the standard changes and disputes articles which were contained in the contract, appealed the decision to the Board of Contract Appeals of the General Services Administration which conducted a transcribed proceeding of unsworn statements, described by the Chairman of the Board as "not a court proceeding" [but] "an informal, roundtable discussion." Appearing on behalf of plaintiff, without counsel, were its president and secretary. Appearing on behalf of defendant were an assistant regional counsel, a supervising electrical engineer, and a supervisor of professional services of the General Services Administration. The Chairman of the Board of Contract Appeals read into the record "a digest or summary of what appears to be the pertinent facts from the files," prepared by a Board of Review, composed of members of the staff of the Administrator of the General Services Administration. Plaintiff's president, who was then recognized by the Chairman of the Board of Contract Appeals, stated:

> Well, after listening to your summary of the conditions that existed, there are several items in there that I would question, though I don't see that—they seem to be more a matter of who said what, rather than their relevance to the facts. So, I am going to ignore everything that you have said there.

There then followed an admixture of argument, hearsay, opinion (apparently nonexpert as well as expert), and com-

ment by the various participants in the "informal, roundtable discussion."[1] Thereafter, the Board, in a written opinion, denied plaintiff's appeal.[2]

The only evidence before the court is the administrative record. Plaintiff has filed in this court a statement alleging that the Board erred in deciding that defendant's "insistence upon maximum possible compliance with a center splice location was neither unreasonable, nor based on erroneous technical advice."

Plaintiff's position before the Board was in substance that, according to the cable manufacturer and standard trade publications, cable splices should be where they would provide a reasonable bending radius, that, so long as the proper bending radius is maintained, the location of the cable splices is relatively unimportant, and that the cables as plaintiff installed them did have ample bending radius, though not spliced in the center of the manholes. From the exhibits which accompany the Board record, including certain correspondence and excerpts from standard trade publications, it appears that, as a general proposition, plaintiff's position is correct; but, as hereinafter indicated, it does not take into account a certain specific provision of the instant contract. In its opinion, the Board stated:

> The Board will accept generally Appellant's [plaintiff's] thesis that cable splices need not be located in the exact manhole center. Yet on this particular project, which was a replacement job, the existing cables had been so centered, and Appellant [plaintiff] knew such fact (or should have known same) from its pre-job site inspection. * * *

The Board concluded that "in the light of all the controlling facts, the Government's insistence upon maximum pos-

sible compliance with such location was neither unreasonable nor based on erroneous technical advice."

In view of the posture of the case before the court, the only facts are those contained in the administrative record, which, as heretofore indicated, leaves much to be desired by way of proof as it is known in court proceedings. Neither party, however, has challenged the adequacy of the Board's proceedings. The only challenge here is to the opinion and decision of the Board.

In the "informal, roundtable discussion," representatives of defendant commented in effect that the insistence by the defendant that the cable splices be located in the center of the manholes was prompted by interests of safety and flexibility of repair, and that, accordingly, plaintiff's failure to locate the cable splices in the center of the manholes constituted poor workmanship.

From a study of the contract documents and the related facts as they appear in the entire administrative record, it is concluded that, although the then-existing cables which plaintiff replaced were spliced in the center of the manholes, the cables which plaintiff installed were not so spliced and, hence, plaintiff's work did not, in accordance with the contract documents, "correspond in all respects to that to which it connects or to similar existing work," even though, from an isolated standpoint of a proper bending radius, the splices need not have been located in the center of the manholes.

It follows then that plaintiff did not adhere to its contractual obligations in its installation of the cables and that defendant was within its rights in insisting that the cables be replaced with cables spliced in the center of the manholes where the replaced cables had been

---

1. The administrative procedures in this case appear to be an illustration of the "subnormal administrative procedures" referred to by Mr. Justice Douglas in the

dissenting opinion in United States v. Carlo Bianchi & Co., Inc., 373 U.S. 709, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

2. Docket No. 629, decided May 22, 1963.

spliced and where it appears from the administrative record there would be not only a proper bending radius, but, greater safety and flexibility of repair. In a recent case, General Bronze Corp. v. United States, Ct.Cl., 338 F.2d 117, loc. cit. 124, decided November 13, 1964, this court stated:

> If the Government is to be held strictly to its contractual obligations as though it were a private obligor, then, of course, it is entitled to insist that those who contract with it shall be held to the same accountability.

■ It is concluded therefore that the decision of the Board dismissing plaintiff's appeal was substantially supported by the record as a whole and cannot be overturned. Carlo Bianchi and Co., Inc. v. United States, Ct.Cl. No. 466–54, decided July 17, 1964.

### CONCLUSION OF LAW

Upon the forgoing opinion which includes therein the findings of fact made by the court as a part of its judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover and the petition is therefore dismissed.