**VENTANA WILDERNESS ALLIANCE; Los Padres Forest; Sierra Club, Plaintiffs—Appellants,**

v.

**John BRADFORD, in his official capacity as Monterey District Ranger; Gloria Brown, in her official capacity as Supervisor, Los Padres National Forest; United States Forest Service, Defendants—Appellees.**

No. 07–16467.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Feb. 13, 2009.

Filed Feb. 26, 2009.

Peter M.K. Frost, Esquire, Eugene, OR, Julia Ann Olson, Esquire, Wild Earth Advocates, San Francisco, CA, for Plaintiffs–Appellants.

Michael Thomas Gray, Esquire, U.S. Department of Justice, Washington, DC, for Defendants–Appellees.

Before: GOODWIN, SCHROEDER and HAWKINS, Circuit Judges.,

## MEMORANDUM *

Appellant Ventana Wilderness Alliance ("Ventana") appeals the grant of summary judgment in favor of defendants John Bradford (in his official capacity as Monterey District Ranger), Gloria Brown (in her official capacity as Supervisor, Los Padres National Forest), and the United States

* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36–3.

Forest Service (collectively, the "Forest Service"). We affirm.

## I. Wilderness Act

The Wilderness Act precludes commercial enterprise on lands designated as wilderness, but specifically permits grazing of livestock where "established" prior to the effective date of the Act. 16 U.S.C. § 1133(c), (d)(4). Congressional guidelines indicate that grazing should not be curtailed simply because of the wilderness designation, but also caution that this does not mean discontinued uses should be re-established. H.R.Rep. No. 101–405 (1990); H.R.Rep. No. 96–617 (1979).

Here, grazing occurred on the land while privately owned for over a hundred years. There was then a temporary cessation in grazing during a transition from private to public land, largely to permit the Forest Service to conduct environmental analysis and allow for public notice and comment of its decision to resume grazing. We agree with the district court that on these facts it was not arbitrary and capricious for the Forest Service to determine that grazing was "established" on ranch land commonly referred to as the Kozy Kove allotment.

A common understanding of the term "established" is "to cause to be recognized and accepted" or "to settle in a secure position or condition," such as an established business or an established religion. American Heritage Dictionary 465 (2d ed.1991). The plain language thus suggests a long-standing historical use-something that has developed over time-versus an isolated snapshot. As the district court noted, the language of the statute requires grazing to be established prior to the wilderness designation, but not necessarily at the exact moment of designation.

■ We agree with the district court that grazing for over 115 years was a sufficient basis on which to conclude that grazing was "established." Moreover, the temporary cessation in grazing did not serve to discontinue the use, especially where the interruption was caused by the transition from private to public land, the Forest Service demonstrated an intent to allow grazing within a fairly short period after acquiring the property, even before the property was officially designated as wilderness.

Although there may be closer cases on different facts, here the history of grazing is significant and the cessation temporary. The agency's decision to permit grazing does not "offend[ ] the plain meaning and manifest congressional intent of the Wilderness Act." *The Wilderness Society v. United States Fish & Wildlife Serv.,* 353 F.3d 1051, 1060 (9th Cir.2003).

## II. National Environmental Policy Act ("NEPA")

■ We also agree with the district court that the Forest Service took the requisite "hard look" at the effects of grazing on solitude and primitive recreation. The Environmental Assessment ("EA") generally considered the visual, auditory and olfactory impacts on recreation from livestock grazing. Using trail data from various nearby allotments, the EA concluded that most recreation occurs in warmer months, which would not significantly overlap with the seasonal winter grazing. *Cf. Lands Council v. McNair,* 537 F.3d 981, 991–94 (9th Cir.2008) (en banc) (endorsing agency's ability to extrapolate data and rejecting *per se* requirement of on-site testing in National Forest Management Act case).

With respect to the property at issue, the EA relied on an expert report which noted the absence of developed recreational amenities on the property and estimated that recreational use was "minimal or nonexistent." The EA also noted that the

property had been grazed since the 1800s, and thus grazing was not a new use.

Viewed as a whole, it was not arbitrary or capricious for the Forest Service to conclude that there would be no significant adverse impact on recreational use.[1]

We also affirm the Forest Service's NEPA analysis of sensitive plants on the property. Although Ventana attempts to create inconsistencies in the various reports and EAs, the 1999 survey did not identify "sensitive" plants within the federal meaning of that term. Nor did the earlier EAs indicate that various sensitive plants actually existed on the property, only that the *potential* existed because of habitat conditions.

Consistent with all this, the Biological Evaluation recognized that no sensitive species had yet been identified on the property, but nonetheless evaluated the likelihood of presence and the impact, if any, from grazing if they actually did occur. Follow-up field surveys in 2005 did not yield any contrary results.[2] Finally, there is nothing inconsistent between the Biological Evaluation's conclusion that grazing might harm some individual plants and the EA's more general observation that grazing can have a positive effect on native vegetation.

### III.   Motion to Strike

■  The district court did not abuse its discretion by granting the motion to strike the declarations of Carolyn Zitterbart and Boon Hughey. When reviewing an agency's action under the Administrative Procedure Act, the reviewing court is ordinarily confined to "consideration of the decision of the agency ... and of the evidence on which it was based." *United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 714–15, 83 S.Ct. 1409, 10 L.Ed.2d 652 (1963).

These declarations were not necessary to explain the agency's action and do not demonstrate that the agency neglected a serious environmental consequence or failed to discuss some reasonable alternative. *See Animal Defense Council v. Hodel,* 840 F.2d 1432, 1436 (9th Cir.1988). The Zitterbart declaration was likely irrelevant, as both parties agreed that grazing during her period of ownership was not outcome-determinative. The Forest Service had considered and responded to Hughey's evidence regarding the Upper Coast trail within the administrative record, and Hughey's declaration that he and his friends would enjoy recreation on the property did not contradict the agency's finding that recreational use was "minimal."[3]

---

1. In its brief, Ventana also complained that the EA ignored the existence of the now-abandoned California Coast Trail, which appears to cross the property on a 1920's map. However, the Forest Service responded to this contention in scoping comments on the EA, accurately stating that "to consider impacts on the potential reopening of an as-of-yet non-delineated trail is speculative." Cf. *Environmental Protection Information Ctr. v. U.S. Forest Service,* 451 F.3d 1005, 1014 (9th Cir. 2006) (Forest Service has obligation only to consider projects that are "reasonably foreseeable" in cumulative effects analysis).

2. To the extent Ventana suggests the field study was insufficient, its allegations appear to be pure conjecture. Moreover, as the en

banc court recently explained in *Lands Council,* under arbitrary and capricious review, this court's task is not to engage in assessments of "the quality and detail of on-site analysis and make fine-grained judgments of its worth," but only to ensure the Forest Service has not relied on improper factors, entirely failed to consider a problem, or offered an explanation counter to the evidence before it. 537 F.3d at 993 (internal quotation omitted).

3. To the extent the district court erroneously swept in other declarations (such as those establishing standing) in granting the motion to strike, this appears inadvertent and, in any event, moot as the Forest Service does not contest standing.

948

For the foregoing reasons, the district court's grant of summary judgment to the Forest Service is **AFFIRMED**.