CANAL REFINING
COMPANY, Plaintiff,

v.

Carl A. CORRALLO, et al., Defendants.

Civ. A. No. 85–1461.

United States District Court,
District of Columbia.

July 1, 1985.

As Amended July 2, 1985.

Order Granting Protective Orders
July 2, 1985.

R.N. Dunagan, III, Bradley G. Mc-Donald, John F. Karl, Jr., McDonald & Karl, Washington, D.C., for plaintiff.

James N. Owens, Asst. U.S. Atty., Noah S. Baer, Senior Atty., Office of the Chief Counsel for Administrative Litigation, Economic Regulatory Admin., U.S. Dept. of Energy, Washington, D.C., for defendants.

## MEMORANDUM

OBERDORFER, District Judge.

Plaintiff is an oil refiner seeking to enjoin the public disclosure of certain information concerning its past business activities by officials of the Economic Regulatory Administration ("ERA") of the Department of Energy ("DOE").

The information in question is contained in a Proposed Remedial Order ("PRO") that has been issued by the ERA in its enforcement capacity as part of a formal administrative litigation currently underway against plaintiff. *See* 10 C.F.R. § 205.190 *et seq.* The PRO alleges that plaintiff violated the Mandatory Petroleum Allocation and Price Regulations by engaging, from July of 1980 through January of 1981, in a series of sham oil transactions [1]

---

1. The PRO alleges that plaintiff, by misreporting its crude oil receipts, effected a deliberate scheme whereby it covertly "switch[ed] virtually all of its controlled crude oil certifications for like volumes of [uncontrolled] stripper [oil] certifications," PRO ¶ IV.12 at 16, thus gaining an illegally-contrived "cost advantage over other domestic producers," *id.* ¶ V.10 at 23.

designed to obtain unlawful benefits under the crude oil Entitlements Program administered by DOE and its predecessors pursuant to 15 U.S.C. § 753 and 10 C.F.R. § 211.67. The PRO, further, demands penalties totaling $12,546,305.70 plus interest in excess of $10,000,000.

A complete copy of the PRO has been served on the plaintiff, and another version, from which the information at issue in this lawsuit has been redacted, has been made available to the public. This dispute concerns whether the ERA may disclose the currently-redacted material. It is plaintiff's theory that the ERA's public release of the redacted information, which was submitted to ERA by the plaintiff only in response to compulsory subpoena[2] and mandatory reporting regulations,[3] would constitute an illegal disclosure of confidential commercial and financial information in violation of Exemptions 3 and 4 of the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552(b)(3), (4) (1982) and the Trade Secrets Act, 18 U.S.C. § 1905, as well as the agency's own regulations, 10 C.F.R. § 1004.11(f) (1985). Accordingly, plaintiff asserts any rights it may have as a submitter of information to prevent public disclosure of this information.

## I.

The guidelines for administering cases such as this have already been set out by the Supreme Court and our Court of Appeals. First, the Supreme Court has made clear that submitters of information to federal agencies have no private right of action under either FOIA or the Trade Secrets Act to enjoin disclosure of the information. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 290–94, 316–18, 99 S.Ct. 1705, 1711–13, 1725–28, 60 L.Ed.2d 208 (1979). Instead, as indicated in *Chrysler* and reiterated by the Court of Appeals of this Circuit, "an information-submitter's right to judicial review of an agency's decision to disclose submitted records arises [only] under the APA." *National Organization for Women v. Social Security Admin.,* 736

F.2d 727, 745 (D.C.Cir., 1984) (per curiam) (McGowan & Mikva, JJ., separate opinion concurring in the result). Under the APA, a submitter of information is entitled to seek to show that the agency's decision to disclose the information in question was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law or ... failed to meet statutory, procedural, or constitutional requirements." *Id.* (quotation marks and citations omitted). As summarized by our Court of Appeals,

[t]he "focal point for judicial review" in such cases "should be the administrative record already in existence, not some new record made initially in the reviewing court." *Camp v. Pitts,* 411 U.S. 138, 142 [93 S.Ct. 1241, 1244, 36 L.Ed.2d 106] (1973) (per curiam). *See also United States v. Carlo Bianchi & Co.,* 373 U.S. 709, 715 [83 S.Ct. 1409, 1413, 10 L.Ed.2d 652] (1963) ("in cases where Congress has simply provided for review, without setting forth the standards to be used or the procedures to be followed, ... consideration is to be confined to the administrative record and ... no *de novo* proceeding may be held").

*Id.*

Thus, an information-submitter *may* seek to enjoin the disclosure of information that it has given to the agency, but such actions are limited to suits under the APA, and, except where a plaintiff can show that the agency's factfinding procedures are "severely defective," *id.,* the judicial role is limited to a review of the pre-existing administrative record. *See id.* at 745–47 (no *de novo* review of claim that disclosure would violate FOIA standards); *Chrysler Corp. v. Brown, supra,* 441 U.S. at 318, 99 S.Ct. at 1726 (no *de novo* review of claim that disclosure would violate Trade Secrets Act).

## II.

The information at issue in this case was collected by ERA in the ordinary course of

---

2. *See, e.g.,* Plaintiff's Brief in Support of Motion for Preliminary Injunction and Declaratory Relief, Exhibit C.

3. *See, e.g.,* 10 C.F.R. § 211.66; Complaint, Exhibit I.

its enforcement function and, as indicated, was submitted by plaintiff to ERA only in response to compulsory subpoena and mandatory reporting requirements. *See supra* at 2. DOE regulations state that, with respect to "all documents required or permitted to be filed with the DOE," 10 C.F.R. § 205.9(a), requests for confidentiality are to be handled as follows:

(1) If any person filing a document with the DOE ... claims that some or all the information contained in the document is exempt from the mandatory public disclosure requirements of the Freedom of Information Act (5 U.S.C. § 552 (1970)), is information referred to in 18 U.S.C. 1905 (1970), or is otherwise exempt by law from public disclosure, and if such person requests the DOE ... not to disclose such information, ... [t]he person *shall* indicate in the *original document* that it is confidential or contains confidential information and may file a statement specifying the justification for non-disclosure of the information for which confidential treatment is claimed. If the person states that the information comes within the exception in 5 U.S.C. 552(b)(4) for trade secrets and commercial or financial information, such person *shall* include a statement specifying why such information is privileged or confidential....

(2) The DOE ... *retains the right to make its own determination with regard to any claim of confidentiality.* Notice of the decision by the DOE ... to deny such claim, in whole or in part, and an opportunity to respond shall be given to a person claiming confidentiality of information no less than *five* days prior to its public disclosure.

10 C.F.R. § 205.9(f) (emphasis added).

The record in this case indicates that plaintiff did purport to assert a claim of confidentiality when it submitted the information at issue, though it did so with no elaboration, and in one respect may have done so incompletely. For example, a cover letter from plaintiff's counsel, dated August 6, 1984, that accompanied one such submission recites that

[t]he enclosed information is confidential and exempt from disclosure pursuant to the Freedom of Information Act (5 U.S.C. § 552) *et seq.* [sic] and is information referred to in 18 U.S.C. § 1905. Accordingly, prior to any disclosure, Canal must be notified in advance in accordance with 10 C.F.R. § 205.9(f).

Complaint, Exhibit I, at 2. Conspicuously, however, the record does not indicate that plaintiff, on submitting the information, took advantage of the opportunity to file any further "statement specifying the justification" for its claim of confidentiality, 10 C.F.R. § 205.9(f)(1); *see also* 10 C.F.R. § 1004.11(a). Nor is there any evidence that plaintiff complied in any way with the *mandatory* requirement that such a statement "shall" be included with any submission for which a person intends to assert a claim of confidentiality under FOIA Exemption 4, *see* 10 C.F.R. § 205.9(f)(1). In the meantime, the regulations gave plaintiff express notice that DOE "retain[ed] the right to make its own determination with regard to" plaintiff's claim of confidentiality. *Id.* § 205.9(f)(2).

DOE regulations indicate that a person or company against whom a PRO is issued typically receives notice well in advance that an investigation and enforcement proceeding has been initiated and may result in a PRO. *See id.* § 205.190–.191. There is no suggestion that plaintiff here was unaware that an investigation of its 1980–1981 activities was underway and that a PRO could follow. The PRO at issue in this case was in fact issued on April 18, 1985, and apparently was received by plaintiff on April 22, 1985. DOE regulations expressly state that, on the issuance of a PRO, the ERA may make available to the public "a copy of the Proposed Remedial Order *with confidential information, if any, deleted ...*" 10 C.F.R. § 205.192(c) (emphasis added). Here, the ERA had been informed of the plaintiff's claims of confidentiality when the information was submitted, and had given plaintiff full opportunity to substantiate its claims at that time. Having retained by regulation the right to make its own determination as to

such claims, the ERA determined to include the disputed information in the PRO, and, upon issuance, gave plaintiff no indication that any portion of the PRO would be deleted from the public version as confidential. Notwithstanding the fact that there is no express evidence that ERA considered the confidentiality assertions before issuing the PRO, ERA's actions must in this context be deemed a denial of plaintiff's claims.

On April 23, 1985, plaintiff wrote a letter to Carl Corrallo, Chief Counsel for Administrative Litigation of ERA, that reiterated plaintiff's general claim of confidentiality for certain (albeit unspecified) information contained in the PRO. Complaint, Exhibit III. Although 10 C.F.R. § 205.9(f) provides for only five days notice during which a submitter has the opportunity to respond before ERA may release information that it has determined may be disclosed, the letter indicated that plaintiff expected ERA to wait until *14* days after the issuance of the PRO, i.e., until May 2, 1985, for plaintiff to substantiate its claim of confidentiality. In addition, the letter also invoked, for the first time, 10 C.F.R. § 1004.11, (although this provision primarily establishes guidelines for the handling by DOE of *third-party requests* for information pursuant to FOIA, *see id.* § 1004.11(b)-(d), (f)-(h) ). Specifically, plaintiff stated that

> In accordance with 10 C.F.R. § 1004.11, Canal expects to receive (1) notice no less than *seven* days prior to any disclosure of the PRO of any ERA determination with regard to *this* claim and (2) an opportunity to respond to that determination.

Complaint, Exhibit III (emphasis added).

By letter dated and received on April 25, 1985, ERA indicated to plaintiff's counsel that ERA would "consider all claims for confidentiality filed ... within *ten* days of [plaintiff's] *receipt* of the PRO [i.e., by May 2, 1985]." Complaint, Exhibit IV (emphasis added). In addition, ERA explicitly cautioned plaintiff that under 10 C.F.R.

§ 1004.11, plaintiff "[did] not have a right of response to the ERA's determination of confidentiality." *Id.*

On May 2, 1985, plaintiff's counsel delivered to defendant a fourteen page letter setting forth the specific items in the April 18, 1985 PRO that it claimed were confidential and exempt from public disclosure under Exemptions 3 and 4 of FOIA and under the Trade Secrets Act. These items—which all related to the period of the alleged violation—included information with respect to categories and amounts of various types of crude oil receipts, percentages of receipts in each category, names of plaintiff's suppliers of crude oil, total volumes of crude oil purchased, certain pricing data, and the names of particular "trading partners," including the name of the particular trading partner with whom plaintiff engaged in the allegedly sham transactions.

Plaintiff, for the first time, also set forth in the May 2, 1985 letter its justifications for its claims.[4] First, plaintiff argued that FOIA Exemption 3, as well as DOE regulations (namely, 10 C.F.R. § 1004.1), exempted from public disclosure any matter specifically exempted from disclosure by statute, and that the Trade Secrets Act was such a statute. According to the letter, the information at issue here falls squarely within the Trade Secrets Act language barring federal officials from disclosing—unless "authorized by law"—any information concerning or relating to

> trade secrets, processes, operations, style of work, or apparatus, or to the identity, confidential statistical data, amount or source of any income, profits, losses, or expenditures of any person, firm, partnership, corporation or association ...

18 U.S.C. § 1905. In order to maintain a claim of confidentiality under the Trade Secrets Act, plaintiff suggested, all that was necessary was to determine whether the information fell within the plain meaning of the § 1905 list. Plaintiff asserted,

---

**4.** The letter opened by renewing the contention that plaintiff was entitled to seven days further notice following ERA's response to the letter before disclosure of the information, as well as an opportunity to respond to the ERA's decision on the renewed claims.

but without any elaboration whatsoever, that much of the information at issue here "[a]rguably" did fall within the § 1905 list, Complaint, Exhibit V, at 13, and that therefore disclosure was barred "regardless of the considerations of the public interest in disclosure." *Id.*, Exhibit V, at 2.

Plaintiff also contended that the information at issue was barred from public disclosure by FOIA Exemption 4, which covers "commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). Tracking the standard Exemption 4 analysis, plaintiff first argued that disclosure would impair the government's ability to obtain a wide variety of information from others in the future. Second, the letter stated that the plaintiff did not customarily disclose such data, and that disclosure here would cause it substantial competitive harm. Complaint, Exhibit V, at 3–13.

However, the letter did not explain or substantiate, with any degree of specificity, the assertion that substantial competitive harm was likely in plaintiff's particular case. Plaintiff instead relied on the general observation that "a combination of public information and FOIA-released data provides a competitor with insight into the submitter's operations. Such combination of sensitive and nonsensitive data can result in an inference of harm." *Id.*, Exhibit V, at 11. Beyond such generalized arguments, plaintiff gave no detail as to how such harm could occur in this case. Rather, for example, plaintiff stated merely that because of some undescribed "combination" with other available data, disclosure of the names of plaintiff's suppliers from July of 1980 through January of 1981 would "help [plaintiff's current] competitors to identify [plaintiff's] current sources of supply." *Id.*, Exhibit V, at 9. This sparse statement assertedly sufficed to explain plaintiff's view that it made no difference that the information was five years old and was from a period prior to the final decontrol of oil. The same absence of detailed explanation characterized plaintiff's claim of confidentiality with respect to information—relating to the same six-month period in 1980–1981—about the nature of plaintiff's crude oil receipts, the total volume of crude oil purchased, the identity of plaintiff's trading partners, and tabulations of various pricing, profit, loss and expenditure data.

On May 6, 1985, ERA wrote a five page letter replying to each of plaintiff's confidentiality contentions, addressing them primarily in terms of whether plaintiff had demonstrated a likelihood of substantial competitive harm within the meaning of the Exemption 4 analysis. Complaint, Exhibit VI. Plaintiff's claims of confidentiality succeeded in at least one respect: ERA announced that it would honor plaintiff's claim as to all but two of the names of suppliers contained in the PRO. With respect to the two remaining suppliers, ERA decided not to honor plaintiff's claim because, it explained, it was not persuaded that the identity of only two firms who supplied plaintiff with crude oil five years earlier was confidential or that disclosure of that information could "cause any current competitive harm." *Id.*, Exhibit VI, at 3.

In all remaining respects plaintiff's contentions were flatly rejected. First, ERA rejected the general contention that disclosure of the information at issue here would impair the government's ability to collect information. It pointed out that where, as here, the government could compel production of the data by subpoena, it was unlikely that disclosure would materially impair access to the information. As to the specific types of information remaining at issue, ERA generally rejected plaintiff's claims of confidentiality as being too conclusory. Thus, ERA expressly rejected plaintiff's assertion that disclosure of the crude oil receipt data would be likely to cause plaintiff substantial competitive harm, on the ground that plaintiff "brought virtually no support for its claim of harm but rests on its bald assertions." *Id.*, Exhibit VI, at 2. ERA similarly rejected the claim of confidentiality for plaintiff's pricing information, the volume of plaintiff's crude oil purchases, and the other items of information at issue, on the ground that disclosure of those aspects of how a firm operated prior

to decontrol could not, in ERA's opinion, "harm that firm in the current decontrolled environment." *Id.*, Exhibit VI, at 3. ERA took the position that to establish confidentiality a firm must demonstrate that "commercial data has relevant predictive value with regard to a firm's current business relationships under current market conditions." *Id.* ERA cited its own prior refusal

to find confidentiality for price and volume data where the supplier of the information has not "clearly demonstrated" that disclosure would enable its competitors to assess the firm's relative market position and marketing strategy and that its release would undermine the firm's current relationship with the purchasers.

Complaint, Exhibit VI, at 4. Here, ERA noted, plaintiff's factual assertions with respect to the Exemption 4 analysis, as well the entirety of its Trade Secrets Act analysis, were merely "conclusory," *e.g.*, *id.*, and thus could not be accepted.

ERA's May 6, 1985 letter concluded: There being no requirement for consideration of any additional comments by [plaintiff], a copy of the ... PRO, with information deleted as discussed, will be placed in the DOE Public Reading Room.

*Id.*, Exhibit VI, at 5. On the next day, May 7, 1985, plaintiff filed this suit, together with an application for a temporary restraining order and a motion for a preliminary injunction. At a May 8 hearing on the temporary restraining order, Chief Judge Aubrey Robinson set an expedited hearing on the preliminary injunction with the understanding that "[n]othing is going to be done by way of publication until we get this heard." Hearing of May 8, 1985, Transcript at 36. Plaintiff, thus, no longer presses the claim in its initial complaint that ERA was required to wait an additional seven days following May 6, 1985 before any disclosure could be made. Instead, the parties have moved straight to the merits of the confidentiality claim. The preliminary injunction motion has been briefed, argued and submitted.

### III.

■ It is necessary to note at the outset that the federal activity out of which this lawsuit arises is an *enforcement* action where the government has accused plaintiff of having violated the Mandatory Petroleum Allocation and Price Regulations, *see* 15 U.S.C. § 753, *see generally id.* §§ 751 *et seq.* This suit does not arise out of a garden variety FOIA context. Thus, apart from the generalized governmental disclosure mandate contained in 5 U.S.C. § 552, ERA at oral argument identified statutory language codified at 15 U.S.C. § 773(b) as giving it the affirmative authority to disclose the information at issue here. That statute states that

all matters reported to, or otherwise obtained by, any person exercising authority under this chapter *containing trade secrets or other matter referred to in section 1905 of Title 18, may be disclosed* to other persons authorized to perform functions under this chapter solely to carry out the purposes of this chapter, or *when relevant in any proceeding under this chapter,* ....

15 U.S.C. § 773(b) (emphasis added). Accordingly, because a PRO is part of a "proceeding under this chapter," disclosure by the agency, when relevant, is statutorily authorized. Plaintiff cannot plausibly contend that the information at issue here is not "relevant" to the PRO and the ongoing enforcement proceeding. Indeed, given the breadth of the statutory language, ERA might well have the authority to include in a PRO even *confidential* data. However, we need not address this question here, because ERA is specifically required by its own regulations to delete, and thereby refrain from disclosing, any "confidential" information contained in a PRO. 10 C.F.R. § 205.190(c). *Cf. id.* § 205.199B(b) (same requirement regarding final Remedial Order).

■ The criteria to be considered by the ERA in determining whether information is "confidential" are codified, as noted by plaintiff, at 10 C.F.R. § 1004.11(f). *See* 10 C.F.R. § 1004.11(a), (f). The criteria set

forth in that regulatory section parallel the factors to be considered in a standard FOIA Exemption 4 analysis, the key elements of which are whether disclosure would "1) ... impair the Government's ability to obtain necessary information in the future; or 2) ... cause substantial harm to the competitive position of the person from whom the information was obtained," *Board of Trade v. Commodity Futures Trading Comm'n*, 627 F.2d 392, 404 (D.C.Cir.1980) (quoting *National Parks & Conservation Ass'n v. Morton*, 498 F.2d 765, 770 (D.C.Cir.1974). The ERA, therefore, did not err in applying the Exemption 4 criteria to plaintiff's claims of confidentiality. *See* Complaint, Exhibit VI, at 1–4. The ERA, moreover, was correct in perceiving that the first prong of the Exemption 4 analysis—whether the government's information-gathering abilities would be impaired—is not at issue here because the submission of the information in question in this case is compulsory. *See, e.g., Worthington Compressors, Inc. v. Costle*, 662 F.2d 45, 50 (D.C.Cir.1981); *National Organization for Women v. Social Security Admin., supra*, 736 F.2d at 737 n. 97 (Opinion of Robinson, C.J.). Accordingly, the focus of the ERA's analysis properly focused on the second prong of the Exemption 4 analysis—the requirement that a plaintiff show that disclosure would cause it substantial competitive harm.

■ Neither did the ERA err as a matter of law in rejecting plaintiff's argument that § 1905 of the Trade Secrets Act imposes a broader definition of "confidentiality" than does the Exemption 4 analysis. Though the Supreme Court refrained from addressing the issue in *Chrysler Corp. v. Brown, supra*, 441 U.S. at 319 n. 49, 99 S.Ct. at 1726 n. 49, ample judicial precedent supports the conclusion that Exemption 4 and § 1905 are "coextensive." *General Motors Corp. v. Marshall*, 654 F.2d 294, 297 (4th Cir.1981); *see National Parks and Conservation Ass'n v. Kleppe*, 547 F.2d 673, 686–87 (D.C.Cir.1976); *CNA Financial Corp. v. Donovan*, C.A. No. 77–0808, slip op. at 10 (D.D.C. October 29, 1981); *appeal docketed*, No. 81–2169 (D.C.Cir. October 30, 1981); *see also Worthington Compressors, Inc. v.*

*Costle, supra*, 662 F.2d at 55 n. 59. Thus, even assuming that § 1905 applies to this case, either directly of its own force or indirectly through Exemption 3 or specific DOE regulations, the Exemption 4 criteria define the outer scope of the analysis. Plaintiff's effort to overcome this precedent by arguing that the Trade Secrets Act proscription should be interpreted in light of the definition of "trade secret" in the Restatement (Second) of Torts, § 757, is unavailing. The Restatement definition expressly defines a "trade secret" as information that gives a business "an opportunity to obtain an advantage over competitors who do not know or use it." Restatement (Second) of Torts, § 757. Thus, the Restatement test, rather than expanding the scope of the prohibition against disclosure of "confidential" information, appears merely to parallel the "substantial competitive harm" prong of the standard Exemption 4 analysis.

■ Having determined that the ERA correctly identified the law to be applied here, it is necessary to determine whether ERA's application of that law to the facts before it was arbitrary or capricious. Close review of the exchange of communications between plaintiff and ERA makes it apparent that ERA did not act in an arbitrary and capricious fashion in concluding, on the basis of the evidence before it, that plaintiff had not made any showing of "substantial competitive harm" with respect to the disputed information. The ERA's characterization of the present nature of the crude oil market and the changes in that market since the final decontrol of oil in January of 1981 does not appear unreasonable and, as such, its expert view is entitled to deference from this Court. The ERA's review of plaintiff's confidentiality claim, moreover, was not a cursory one: ERA responded with a detailed, five page analysis of plaintiff's claims, and it did, for example, honor plaintiff's claim with respect to the vast majority of the suppliers whose names ERA originally intended to disclose. With respect to the remaining items, however, the ERA adhered to its determination that the infor-

mation—which pertained to a specific practice during a limited number of months prior to the final decontrol of oil—had minimal predictive value in the current commercial environment. The record reveals that with respect to these remaining items, plaintiff simply failed to adduce any facts, or provide even factual proffers, in support of its conclusory assertions that current competitive harm would result. Accordingly, the detailed and reasoned decision contained in the ERA's letter of May 6, 1985, cannot be deemed arbitrary and capricious.

■ Plaintiff finally argues that ERA's factfinding procedures with respect to claims of confidentiality failed to provide plaintiff with an adequate opportunity to adduce the facts necessary to meet the burden of showing competitive harm. The Court of Appeals of this Circuit has made clear that where agency factfinding procedures are "severely defective," *de novo* review by the Court may be appropriate. *National Organization for Women v. Social Security Admin., supra,* 736 F.2d at 745. Plaintiff would have the Court conduct such a *de novo* review here. Plaintiff's request, however, must be rejected for several reasons. First, the Court of Appeals has stated that *de novo* review is frowned upon at the preliminary injunction stage. *Id.* at 746–47; *see also Chrysler Corp. v. Brown, supra,* 441 U.S. at 318, 99 S.Ct. at 1726. Second, the procedures here were not "severely defective" in any event. *See National Organization for Women v. Social Security Admin., supra,* 736 F.2d at 746–47.

The ERA has made it very clear, in publicly reported decisions arising from prior litigation, that a specific factual showing of competitive harm is required for a submitter to establish a claim of confidentiality. *See, e.g., Bassman & Mitchell,* 11 DOE ¶ 80,157 (1984). DOE regulations require submitters to assert all claims of confidentiality at the time that the information is submitted, *see* 10 C.F.R. § 205.9(f)(1), place the burden of proving confidentiality plainly on the submitter, *id.* § 205.9(f)(2), and give the submitter full opportunity to assert and support any claim of confidentiality when the information is submitted, *id.*

§ 205.9(f)(1). Indeed, DOE regulations *require,* at 10 C.F.R. § 205.9(f)(1), that a specific justificatory statement accompany the *submission* of *any* information for which a submitter intends to assert a claim of confidentiality under Exemption 4. (It is worth noting that, here, plaintiff provided no specific Exemption 4 justification until May 2, 1985—long after the information was originally submitted.) Plaintiff, moreover, had notice well before April 18, 1985, that an investigation regarding transactions in 1980 and 1981 was underway and that a PRO was possible. Thus, plaintiff has no basis for arguing that it was unaware, prior to April 18, 1985, of the potential need to present a factual justification to establish its claims of confidentiality.

■ Given that the applicable regulations plainly require submitters to assert all claims of confidentiality at the time that the information is submitted, and either require or allow submitters to substantiate such claims at that time, it is not surprising that DOE regulations do not provide any elaborate procedure for the review of claims of confidentiality that are asserted or renewed *after* a PRO has been issued. The regulations, after all, do notify submitters that DOE "retains the right to make its own determination with regard to any claim of confidentiality," *id.* § 205.9(f)(2), and therefore, as set forth above, the issuance of a PRO, without any indication that deletions from the public version are anticipated, must itself be deemed a denial of the submitter's claim of confidentiality. Plaintiff seems to suggest that no "denial" could have occurred in this case until after it had *renewed* its claims of confidentiality *following* the issuance of the PRO. This contention, however, would render meaningless the requirement that all claims of confidentiality be asserted at the time that the information is first submitted. Accordingly, plaintiff's contention on this score must be rejected.

After a PRO is issued and received by the submitter, thereby giving the submitter notice of the agency's ruling on the submitter's claims of confidentiality, DOE regula-

tions require only that the submitter be afforded "an opportunity to respond . . . no less than five days prior" to the disclosure of the information. 10 C.F.R. § 205.9(f)(2). The post-PRO procedures that in fact ensued here consisted of an exchange of a series of letters between the parties—first establishing a timetable for the submission of further statements, and then addressing the merits. The procedures were informal, straightforward, and fastpaced, yet "they were not closed, unfair, or otherwise inadequate to the task of developing a factual record, as well as a record of [the] submitter['s] objections, based upon which one could decide rationally whether material is exempt from disclosure." *National Organization for Women v. Social Security Admin., supra,* 736 F.2d at 746. As noted, plaintiff, advised by competent counsel, should have been well aware of the specific factual showing that would have been necessary to establish a claim of confidentiality, and should have been aware that the need to make such a showing might arise. Moreover, if facts existed that plaintiff would indeed have submitted if more time were available, plaintiff could at least have made a specific proffer as to those facts, or could have submitted an affidavit indicating the presence of a genuine question as

to whether such material facts existed and could be adduced. As actually occurred, however, plaintiff received all the time it requested—i.e., until May 2, 1982—to state its justifications, and yet restricted itself solely to a lengthy discussion of the applicable legal standards and conclusory assertions that its claims of confidentiality in fact fit under those standards.

No additional information presented to this Court has provided any support to the contention that the agency procedures were inadequate or hindered plaintiff's ability to make the requisite factual showing. Plaintiff did submit, in the proceedings before this Court, an affidavit asserting that disclosure would cause it substantial competitive harm, but that affidavit, from plaintiff's president, is woefully conclusory, *see* Brief in Support of Motion for Preliminary Injunction and Declaratory Relief, Exhibit D, and utterly fails to indicate the existence of any further factual detail that could have been demonstrated if the agency procedures were fuller.[4a] In response to direct inquiry by the Court at oral argument, in addition, plaintiff's counsel failed to give any indication that, if this case were remanded to the agency, plaintiff would adduce any more in the way of facts than it already has. *See* Hearing of May 31, 1985,

---

**4a.** On or about 9:15 A.M. on May 31, 1985—the morning of the hearing on plaintiff's motion for a preliminary injunction and the day after plaintiff's reply papers were due—plaintiff's counsel hand-delivered to chambers a further motion for a protective order to seal portions of a new, additional submission to the record: a May 30, 1985 affidavit of Coty R. Dupre, which was designated as Exhibit C to plaintiff's reply brief. Attached to the motion were redacted and unredacted versions of the affidavit. However, the papers thus hand-delivered to chambers did not contain any of the requisite file stamps signifying that the papers had been properly filed with or submitted to the Clerk of Court. It now appears that the motion and affidavit (both as redacted and as unredacted) were indeed filed with the Clerk, but that the chambers' notification of this fact was obscured by the failure to properly stamp the chambers' copies, which apparently resulted from plaintiff's counsel's efforts to hand-deliver this late-filed submission to chambers prior to the hearing.

Nothing in the May 30, 1985 Affidavit of Coty R. Dupre occasions any need for modification

of the result set forth herein. The affidavit does recite certain facts with respect to plaintiff's business (i.e., gross purchases and sales volumes in 1979 and 1984, and the extent to which plaintiff's current purchases and supply derive from the two 1980–1981 suppliers that ERA has determined may be disclosed). However, the facts in the affidavit were not adduced during the consideration of plaintiff's confidentiality claim by the ERA. In the posture of this matter before this Court, the affidavit—in connection with the entire record before the Court—establishes neither (1) that the determination of plaintiff's confidentiality claims by the ERA—on the basis of the information before it at the time—was arbitrary or capricious, *see supra* at 1042–1043 nor (2) that the agency's fact-finding procedures were "severely defective" or caused the plaintiff's failure to adduce any factual information of this type before the agency, *see supra* at 1043–1045. Since the agency procedures were not "severely defective," there has been no *de novo* review of any of the evidence submitted by plaintiff, including the May 30, 1985 affidavit. *See National Organization for Women v. Social Security Admin., supra,* 736 F.2d at 745–47.

Transcript Excerpt at 2–6, 8–9.[5] Accordingly, there is no basis for holding that the agency procedures in this case were inadequate.

 Plaintiff, thus, has made no showing of any likelihood that it might succeed on the merits. Neither has plaintiff shown that disclosure of the information at issue here would cause it any substantial harm. At the same time, the public interest plainly favors the disclosure of information relevant to a formal enforcement action. The balance of these factors weighs clearly against affording plaintiff the relief here sought. *See Washington Metropolitan Area Transit Commission v. Holiday Tours, Inc.*, 559 F.2d 841 (D.C.Cir.1977). An accompanying order will deny the motion for a preliminary injunction, and allow the disclosure of the information at issue in this case on the tenth day following entry of the order.

### ORDER

For reasons stated in an accompanying memorandum, it is this 30th day of June, 1985, hereby

ORDERED: that plaintiff's motion for a preliminary injunction should be, and is hereby, DENIED; and it is further

ORDERED and DECLARED: that the bar against public disclosure of the material at issue in this case imposed by the Order of May 8, 1985, should be, and is hereby, VACATED, and that the defendants may publicly release the information at issue in this case, as of the tenth day following the entry of this Order.

### ORDER GRANTING MOTIONS FOR PROTECTIVE ORDERS

On May 14, 1985 and May 15, 1985, plaintiff submitted individual motions for protective orders to seal separate portions of the record. On or about 9:15 A.M. on May 31, 1985—the morning of the hearing on plaintiff's motion for a preliminary injunction and the day after plaintiff's reply papers were due—plaintiff's counsel hand-delivered to chambers a further motion for a protective order to seal portions of a new, additional submission to the record: a May 30, 1985 affidavit of Coty R. Dupre, which was designated as Exhibit C to plaintiff's reply brief. Attached to the motion were redacted and unredacted versions of the affidavit. However, the papers thus hand-delivered to chambers did not contain any of the requisite file stamps signifying that the papers had been properly filed with or submitted to the Clerk of Court. It now appears that the motion and affidavit (both as redacted and as unredacted) were indeed filed with the Clerk, but that the chambers' notification of this fact was obscured by the failure to properly stamp the chambers' copies, which apparently resulted from plaintiff's counsel's efforts to hand-deliver this late-filed submission to chambers prior to the hearing.

Pending further proceedings in this matter, the above-described motions shall be granted. Of course, the parties may at any time file any motion to vacate the protective orders entered in this action. Given that it is now apparent that the May 30, 1985 Affidavit of Coty R. Dupre was indeed submitted to the Clerk of Court, another order entered this date amends the Memorandum and Order of July 1, 1985 to reflect the Court's consideration of that affidavit.

Accordingly, it is this 2d day of July, 1985, hereby

ORDERED: that the motions for protective order to seal filed by plaintiff on May 14, 1985; May 15, 1985; and May 31, 1985, should be and are hereby GRANTED.

---

5. Moreover, in view of this colloquy, and the full briefing and argument already conducted, all the reasons for denial of the preliminary injunction would apply with equal force to a defendant's motion for summary judgment.