**NATIONAL LAW CENTER ON HOME-LESSNESS AND POVERTY, et al., Plaintiffs,**

and

**National Union of the Homeless, et al., Plaintiffs–Intervenors,**

v.

**UNITED STATES DEPARTMENT OF VETERANS AFFAIRS, et al., Defendants.**

**Civ. A. No. 88–2503–OG.**

United States District Court, District of Columbia.

April 20, 1990.

John C. Keeney, Jr. and Craig A. Hoover, Hogan & Hartson, Washington, D.C., for plaintiffs-intervenors.

Arthur R. Goldberg and Mary E. Magee, U.S. Dept. of Justice, Washington, D.C., for defendants.

## MEMORANDUM

GASCH, Senior District Judge.

In December 1988, this Court granted summary judgment and permanent injunctive relief for plaintiffs in this action. The Court found that defendants, five federal agencies, were failing to comply with the Stewart B. McKinney Homeless Assistance Act, 42 U.S.C. § 11301 et seq., which requires federal agencies to make vacant federal properties available to assist the homeless. The Court established a schedule for defendants to adhere to in implementing the Act. In addition, the Court retained continuing jurisdiction over the action for the purpose of enabling any party to seek such further relief from the Court as necessary to ensure compliance with the Act. Order of Dec. 13, 1988, at 4.

The focus of this litigation is now on a parcel of federal property known as "Barracks K," which in 1988 was identified as excess property suitable for homeless use under the McKinney Act. Plaintiff-intervenors ("intervenors") thereafter took all necessary steps to acquire the property from the General Services Administration ("GSA") for the purpose of constructing low cost housing. Meanwhile, the Department of the Navy also sought to acquire the property. The Navy, in fact, had been fully utilizing Barracks K for some 40 years. On June 30, 1989, the GSA decided to transfer Barracks K to the Navy. Intervenors contest this decision.

Intervenors maintain that GSA's transfer decision was arbitrary, capricious, and unlawful. Now before the Court is defendants' motion for summary judgment with respect to this challenge. The Court held a hearing on this motion on March 14, 1990. Upon consideration of the parties' memoranda, the arguments of counsel in open Court, and for the reasons set forth below, the Court grants defendants' motion for summary judgment and upholds GSA's decision to transfer Barracks K to the Navy.

## I. BACKGROUND

### A. The McKinney Act

Congress first passed the McKinney Act on an expedited basis in the Spring of 1987. The Act expresses a congressional commitment to "use public resources and programs in a more coordinated manner to meet the critically urgent needs of the homeless of the Nation." 42 U.S.C. § 11301(b)(2). Section 501, codified at 42 U.S.C. § 11411, sets out the process by which vacant federal properties are to be made available to assist the homeless.

Subsection (a) requires the Department of Housing and Urban Development ("HUD") to collect information about properties described as unutilized or underutilized by the landholding agencies and to identify properties that "are suitable for use for facilities to assist the homeless." *Id.* § 11411(a). HUD is instructed to consult with GSA and the Department of Health and Human Services ("HHS") when developing the criteria for the suitability determination. Once property has been identified as suitable, HUD is required to notify the appropriate landholding agency. The landholding agency then has thirty days in which to (1) declare the property "excess" to its needs, (2) "make the property available on an interim basis" to homeless providers, or (3) explain to HUD and GSA why the property cannot be declared excess or made available to the homeless on an interim basis. *Id.* § 11411(b).

Section 501(c) states that HHS and GSA "shall, in accordance with other federal law, take such action as may be necessary to make buildings and property identified under subsection (a) available" to homeless providers. *Id.* § 11411(c). The reference to "other federal law" in this section incorporates the Federal Property and Administrative Services Act ("FPASA"), 40 U.S.C. § 471 *et seq.*, into the McKinney Act. Under the FPASA, excess property must be reported to GSA by the agency holding the property. GSA then subjects the property to federal screening (unless waived), which means that GSA notifies other federal agencies of the availability of the property and allows them to submit to GSA a request for transfer. 41 C.F.R. §§ 101-47.-201-1, 101-47.203-5 (1989). Upon determination by GSA that the requested transfer is in the "best interest" of the United States, the reporting agency transfers the property to the requesting agency. *Id.* § 101-47.203-7(b). Read in conjunction with the FPASA, the Court has interpreted § 501(c) of the McKinney Act to mean that properties declared excess by the landholding agencies may, but need not be, offered to other federal agencies before they are available to assist the homeless. *National Coalition for the Homeless v. United*

*States Veterans Admin.*, No. 88–2503, Mem.Op. at 25, 1988 WL136958 (D.D.C. Dec. 15, 1988).

### B. *Background of the Litigation*

Barracks K is a 14.05 acre parcel of property located west of the Pentagon and south of Arlington Cemetery in Arlington, Virginia. Barracks K was part of a larger parcel purchased by the Federal Highway Administration ("FHA") in 1941. By virtue of temporary use permits, the Navy has been in continuous use of Barracks K since the early 1940's. In August 1966, the FHA declared Barracks K to be "excess" property and reported it to GSA for further federal utilization or disposal. In the early 1970's, a parking lot was installed on an 11.95 acre parcel of Barracks K, while the remaining 2.10 acres was occupied by a Navy-operated gas station. In 1979, the property was subjected to federal screening, but no federal agency (including the Navy) requested transfer of the property. To date, the land serves to provide parking for the 6,000 employees of the Navy Annex, with more than 1,000 cars being parked there on any given workday.

On November 4, 1988, the Navy requested that GSA transfer Barracks K to the Navy. GSA did so three days later. The following day, November 8, 1988, intervenors filed a motion for temporary restraining order and preliminary injunction, requesting that the Court enjoin the transfer of Barracks K as inconsistent with the preliminary injunction entered in this case on September 30, 1988. *See National Coalition for the Homeless v. United States Veterans Admin.*, 695 F.Supp. 1226 (D.D.C.1988). On November 14, 1988, the Court vacated GSA's transfer to the Navy, holding that GSA was not free to dispose of Barracks K without first complying with the McKinney Act. However, the Court specifically stated that "GSA may transfer the property to the Navy if the transfer is consistent with the federal property statutes and the McKinney Act," and that "Neither the McKinney Act nor the Court's previous order require GSA to make the property known as Barracks K available to

the intervenors." Mem.-Order of Nov. 14, 1988, at 2–3.

On December 15, 1988, the Court entered permanent injunctive relief against defendants. *National Coalition for the Homeless v. United States Veterans Admin.*, No. 88–2503, Mem.Op. (D.D.C. Dec. 15, 1988). The Court ordered GSA to submit its inventories of excess and surplus properties to HUD so that HUD could perform suitability determinations on those properties, as required by § 501(a) of the Act. The Barracks K property was included in GSA's inventory of excess properties at the time of this Court's Order.[1] In addition, on December 5, 1988, GSA had filled out an informational checklist provided by HUD as part of the process for determining suitability. In assessing the suitability of Barracks K, GSA answered "No" in response to the question: "Are there now, or are there anticipated to be, any limitations in the use of this Property to assist the homeless for a period of one year or more?" Thus, despite the fact that Barracks K had been fully utilized by the Navy for some 40 years, and that the Navy had requested a formal transfer of the property only one month earlier, by GSA's own account the property appeared available without restriction for purposes of the McKinney Act.

On January 9, 1989, HUD determined that Barracks K was suitable for use to assist the homeless within the meaning of § 501(a) of the Act. This determination was published in the Federal Register. 54 Fed.Reg. 667 (Jan. 9, 1989). Thereafter, intervenors formed the non-profit corporation Creative Housing Solutions, Incorporated ("CHS") to implement their proposed plans to apply for and obtain Barracks K for use as a transitional housing facility for homeless families. From March to May, 1989, CHS submitted its original and supplemented applications to HHS. CHS sought to construct 100 modular townhomes on the property, which would house 300–500 individuals. CHS also planned to build a central unit that would hold a day care center, administrative offices, meeting rooms, and other facilities. In all, CHS submitted approximately 600 pages to HHS, and its members spent over 1,000 hours preparing the applications. On June 2, 1989, HHS approved CHS's final application and requested GSA to assign the Barracks K property to CHS.

Meanwhile, the Navy had also submitted to GSA a formal request for the transfer of Barracks K for continued use as a parking facility for the Naval Annex. In a letter dated February 2, 1989, the Under Secretary of the Navy requested the transfer of Barracks K, stating that "continued Navy use of [the] Barracks K property is absolutely vital to the Department of the Navy and its seat-of-government mission." Defendants' Opposition to Intervenors' Motion for Preliminary Injunction, Exhibit 2, at 17. In a letter dated June 9, 1989, the Under Secretary again informed GSA that the Navy's continued use of Barracks K was vital to its future plans. *Id.* Exhibit 3.

Between June 2 and June 30, 1989, GSA conducted a review of these competing requests for Barracks K. On June 30, 1989, GSA rendered its decision to transfer Barracks K to the Navy, at a fair market value of $6 million, for continued use as a parking facility.

Several days later, intervenors filed a motion for temporary restraining order and preliminary injunction, arguing that GSA's transfer decision violated the procedural requirements of the McKinney Act. Intervenors argued, in part, that GSA was without authority to refuse a transfer request at such a late stage of the process, after HHS had already approved an application. The Court rejected this argument, holding that "GSA is not compelled to make its decision at an early stage of the proceedings. GSA may wait until it has the benefit of HHS' views before choosing between two competing requests." Mem. of July 14, 1989, at 10.[2] Accordingly, when

---

1. Since 1966, Barracks K had been deemed "excess" property with respect to the FHA. *See supra* p. 1150.

2. Intervenors also argued that GSA violated the McKinney Act by failing to publish a statement of reasons under § 501(b). The Court rejected this argument. *See* Mem. of July 14, 1989, at 8.

presented with competing requests for federal property, GSA's role is to balance the proposed use of the property as represented in the HHS application against the needs of the federal agency. *Id.* at 11. Although homeless providers are to be given priority, properties requested by HHS for lease to the homeless may nonetheless be transferred to a federal agency upon a showing of "compelling need." *Id.* at 9.

After this Court denied intervenors' motion for temporary restraining order and preliminary injunction, intervenors propounded discovery requests to GSA, HHS, and the Department of Defense. In lieu of responding to these discovery requests, defendants simultaneously filed a motion for protective order and a motion for summary judgment. At a status conference held February 8, 1990, the Court expressed its interest in resolving the motion for summary judgment, which is now before the Court.[3]

## II. DISCUSSION

### A. *Adequacy of the Administrative Record*

As a threshold matter, the Court must decide whether, for the purposes of judicial review, the documents filed by defendants constitute the complete administrative record of GSA's decision to transfer Barracks K to the Navy. Intervenors insist that the record is incomplete and that they should be allowed an opportunity for discovery prior to a ruling on defendants' motion for summary judgment. They ar-

gue that the Court's consideration of defendants' motion is therefore premature.

 The standard for review of GSA's decision under the Administrative Procedure Act ("APA") is whether it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see New England Power Co. v. Goulding*, 486 F.Supp. 18, 20 (D.D.C.1979) (applying "arbitrary and capricious" standard in reviewing GSA's decision to sell a parcel of excess property to a municipality rather than to two electric utility companies).[4] It is settled that a court's review of agency action under this standard is confined to the administrative record compiled by the agency. The Court may not engage in *de novo* review. *Camp v. Pitts*, 411 U.S. 138, 142, 93 S.Ct. 1241, 1244, 36 L.Ed.2d 106 (1973); *National Org. for Women, Washington, D.C. Chapter v. Social Security Admin.*, 736 F.2d 727, 734 (D.C.Cir.1984) (citing *United States v. Carlo Bianchi & Co.*, 373 U.S. 709, 715, 83 S.Ct. 1409, 1413, 10 L.Ed.2d 652 (1963)). For this reason, the general rule is that discovery is not permitted prior to a court's review of the legality of agency action under § 706(2)(A) of the APA. *San Luis Obispo Mothers for Peace v. Nuclear Regulatory Comm'n*, 751 F.2d 1287, 1324 (D.C.Cir.1984), *cert. denied*, 479 U.S. 923, 107 S.Ct. 330, 93 L.Ed.2d 302 (1986); *Doraiswamy v. Secretary of Labor*, 555 F.2d 832, 839–42 (D.C.Cir.1976).

There are several exceptions to this general rule. *See San Luis Obispo*, 751 F.2d at 1326–29. The exception upon which intervenors rely was established in *Natural*

---

**3.** Because the discovery dispute is necessarily intertwined with the issues raised in the motion for summary judgment, the Court has considered all memoranda submitted by the parties since October 2, 1989. In view of the Court's disposition of this case in defendants' favor, the Court will also grant defendants' motion for protective order and deny intervenors' Rule 56(f) motion for continuance or further discovery, though conceding that these motions are now technically moot.

**4.** Intervenors correctly point out that the court in *New England Power* did not explicitly state that it was applying the "arbitrary and capricious" standard of review. However, the court explicitly relied on *Sierra Club v. Environmental*

*Protection Agency*, 540 F.2d 1114 (D.C.Cir.1976), *vacated on other grounds*, 434 U.S. 809, 98 S.Ct. 40, 54 L.Ed.2d 66 (1977), where the Court of Appeals squarely enunciated the standards governing judicial review under the "arbitrary and capricious" standard of § 706(2)(A). *See* 540 F.2d at 1123–24; *New England Power*, 486 F.Supp. at 20.

Intervenors also suggest that *de novo* review of GSA's transfer decision might be warranted. *See* Intervenors' Opposition to Defendants' Motion for Protective Order, at 8–9 n. 14. The Court finds no authority for that suggestion, and intervenors appear to have abandoned it in their more recent submissions to the Court.

*Resources Defense Council, Inc. v. Train,* 519 F.2d 287, 291–92 (D.C.Cir.1975), where the Court of Appeals held that plaintiffs who make a "substantial showing" that an administrative record is incomplete "are entitled to an opportunity to determine, by limited discovery, whether any other documents which are properly part of the administrative record have been withheld." *Id.* at 292.

Intervenors' reliance on *Train* is not wholly persuasive. In an important respect, that case is factually distinguishable from the situation presented here. In *Train,* the agency never claimed that it had filed the entire administrative record with the court. Indeed, it virtually acknowledged that certain key documents were withheld. *See id.* at 291. With that in mind, the Court held that it was error for the district court to proceed with its review "on the basis of a partial and truncated record." *Id.* In contrast, defendants in this case filed a certified copy of the administrative record. They attached to the record the certification of Earl Jones, GSA's Commissioner of Federal Property Resources Service, stating that the documents submitted "constitute the complete administrative record regarding GSA's decision to transfer Barracks K to the Navy on June 30, 1989." Exhibit 7 to Defendants' Motion for Summary Judgment, at ¶ 4. Defendants have maintained throughout their memoranda to this Court and during oral argument that the complete record is now on file.

Nonetheless, intervenors persist in arguing that certain key documents are missing and that discovery is warranted. They point to GSA's omission of an appraisal performed on the Barracks K property in November 1988, and to GSA's omission of a "Fact Sheet" which shows that Barracks K was subject to federal screening in 1979. Defendants concede that these documents are missing. In fact, they maintain that these documents are properly missing. GSA determined that these documents were irrelevant to the Barracks K transfer decision. GSA did not consider these documents when making its decision. Accordingly, they were excluded from the record.

In arguing that they are entitled to the discovery they seek, intervenors also rely on *Exxon Corp. v. Department of Energy,* 91 F.R.D. 26 (N.D.Tex.1981) and *Tenneco Oil Co. v. Department of Energy,* 475 F.Supp. 299 (D.Del.1979). Intervenors' reliance is somewhat misplaced. Those cases are factually distinguishable, of course. More important, however, both *Exxon Corp.* and *Tenneco Oil* involved judicial review of agency orders under the "substantial evidence" test of APA § 706(2)(E), under which the record itself is deemed to be the "basis of agency action." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 415, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). In contrast, under the less demanding "arbitrary and capricious" standard applicable in this case, the Court must determine "whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Id.* at 416, 91 S.Ct. at 823; *see Exxon Corp.,* 91 F.R.D. at 36.

■ The Court concludes that intervenors have failed to make a substantial showing that GSA's record of decision is incomplete. In the end, the heart of intervenors' argument is that discovery is necessary, not to ensure a complete record, but to ensure that GSA conducted an adequate analysis of all relevant factors. But deciding whether GSA adequately considered all relevant factors is precisely the function of this Court in reviewing GSA's decision under § 706(2)(A) of the APA. Moreover, should the Court find that the complete administrative record is factually deficient, the proper course is not to allow intervenors extensive discovery, but to reverse and remand GSA's decision to the agency for further factual development. *See Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983); *San Luis Obispo,* 751 F.2d at 1326. In any case, because intervenors have failed to make a substantial showing that the administrative record is incomplete, they are not entitled to the discovery they seek. Accordingly, defendants' motion for summary judgment is ripe for review.

**B.** *Review of GSA's Decision under the APA*

This Court's review of GSA's decision under the arbitrary and capricious standard involves a two-pronged analysis. The Court must first ask whether GSA "acted within the scope of its authority." *Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823. Once that has been established, the Court must consider whether GSA's decision is rationally based on a consideration of all relevant factors. *Id.* at 416, 91 S.Ct. at 823. Regarding the scope of review, the Supreme Court has explained:

> Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency.

*Id.* The arbitrary and capricious standard of review is "highly deferential" and "presumes agency action to be valid." *Ethyl Corp. v. Environmental Protection Agency*, 541 F.2d 1, 34 (D.C.Cir.), *cert. denied*, 426 U.S. 941, 96 S.Ct. 2663, 49 L.Ed.2d 394 (1976). The Court is not to inquire into whether the agency's decision is wise as a matter of policy. *National Ass'n of Food Chains, Inc. v. Interstate Commerce Comm'n*, 535 F.2d 1308, 1314 (D.C.Cir. 1976).

With respect to the first prong of the *Overton Park* test, it is clear that GSA, in deciding to transfer Barracks K to the Navy instead of making it available to CHS, was acting within the scope of its statutory authority. The legislative history to the 1988 amendments to the McKinney Act reflects that Congress intended GSA to retain discretion in deciding to whom property would be made available. The Conference Report to the 1988 amendments states:

> Section 501, as amended, does not, of course, provide that every property identified as suitable under subsection (a) must be made available but only provides that such properties be made available in accordance with other applicable Federal law. To give priority of consideration to the use of property to assist the homeless does not require disregarding consideration of other uses that may serve important Federal and national needs for which other law provides.

H.Conf.Rep. No. 1089, 100th Cong., 2d Sess. 81 (1988). In addition, this Court has on several occasions concluded that GSA's responsibilities under the McKinney Act do not negate its authority to weigh competing needs and, when appropriate, to make property available to other federal agencies. *See* Mem. of Dec. 15, 1988, at 22–23 ("defendants are correct that GSA can offer property identified as suitable and declared excess to other federal agencies for their use"); Mem. of July 14, 1989, at 9–10 ("properties requested by HHS for lease to the homeless will be transferred in the absence of a compelling need by [a] federal agency"); *see also* Mem.–Order of Nov. 14, 1988, at 2–3 ("GSA may transfer [Barracks K] to the Navy if the transfer is consistent with the federal property statutes and the McKinney Act"). Clearly, in deciding to transfer Barracks K to the Navy, GSA "acted within the scope of its authority." *Overton Park*, 401 U.S. at 415, 91 S.Ct. at 823.

With respect to the second prong of the *Overton Park* test, the Court finds that GSA's decision was rationally based on a consideration of all relevant factors. The record reflects that GSA first reviewed the request by HHS to assign the property to CHS, including the proposed use of the property, the financial feasibility of that use, the short- and long-term benefits of that use, and the availability of alternatives. GSA next reviewed the Navy's request for the transfer of Barracks K, including the Navy's representations that the loss of parking facilities would severely disrupt the normal conduct of business at the Naval Annex, and that Barracks K was included in future plans for the expansion of the Pentagon complex. The Navy also informed GSA that it had considered three alternatives to the continued use of Barracks K: (1) the relocation of the parking facility to a portion of the Foxcroft Heights residential area, which would cost approximately $20 million; (2) the relocation of the parking facility to an adjacent tract of land owned by the Virginia Department of

Transportation ("VDOT"), which would cost approximately $15 million; and (3) the relocation of the Naval Annex to a suburban locale, which was not regarded a viable alternative due to the Annex's need for proximity to the Pentagon. In light of these considerations, GSA concluded:

After evaluating each applicant's proposal and considering all available alternatives, information and applicable law, it is concluded that this site is essential and critical for meeting the longstanding requirements of a Federal agency. The Federal Government's need for this property is site specific. It is estimated that alternative parking if present use is precluded could cost the Government as much as $20,000,000 while displacing a minimum of 60 households. In addition, the Department of Defense (DOD) has indicated that the property is considered integral to the future plans of the Secretary of Defense for the expansion of and service to the Pentagon complex. Not only is the property fully utilized, but there are identifiable future Federal needs involving important missions of the DOD that will be satisfied by this transfer. Therefore, it is recommended that this property be permanently transferred to the Department of the Navy for continued Federal Government use.

GSA's "Decision Paper," Exhibit 2 to Defendants' Opposition to Intervenors' Motion for Preliminary Injunction, at 2.

The Supreme Court has clarified that an agency's decision will normally be deemed arbitrary and capricious when it appears that the agency, among other things, "entirely failed to consider an important aspect of the problem" or "offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 103 S.Ct. 2856, 2866, 77 L.Ed.2d 443 (1983). Intervenors argue that GSA's decision is fatally flawed because GSA entirely failed to consider relevant factors and offered an explanation for its decision that runs counter to

the evidence. They point to the fact that GSA entirely failed to consider the following factors: (1) the needs of the homeless in Northern Virginia for transitional housing of the type proposed by CHS and the current lack thereof; (2) the possible alternative of public transportation for Navy employees who currently park at Barracks K; (3) the potential availability of the adjacent VDOT site as an alternative parking lot; and (4) the contradiction raised by the fact that the $6 million valuation of Barracks K was $8 million less than an earlier valuation, not included in the record, which had appraised Barracks K at $14 million.

The Court has carefully considered intervenors' challenges to GSA's decision. These challenges are not to be lightly dismissed. This Court has previously held, and GSA agrees, that "homeless providers are to be given priority" when weighing competing requests for property, and that properties requested by HHS should be transferred for homeless use "in the absence of a compelling need by the federal agency." Mem. of July 14, 1989, at 9. Based on the record, it does not appear that GSA thoroughly considered the fact that transitional facilities or services comparable to the one proposed by CHS are not available in the Northern Virginia area. Nor does it appear that GSA really understood the nature of the housing problem sought to be remedied by intervenors' proposed plans.

However, by insisting that GSA failed to consider all factors relevant to each "alternative," intervenors similarly misconstrue the nature of GSA's task. The "alternatives" that GSA was required to weigh were one, whether to transfer Barracks K to CHS, or two, whether to transfer Barracks K to the Navy. Consistent with the McKinney Act, GSA should not revisit issues already decided by HHS and HUD regarding HHS' request to transfer the property for homeless use.[5] Similarly, at least in the context of this case, GSA was not required to scrutinize the "alternatives" to the Navy's continued use of Bar-

---

**5.** The Court has already noted GSA's "inaccurate and incomplete recapitulation of the suitability question and CHS' application in this case." Mem. of July 14, 1989, at 10–11 & n. 5.

racks K which the Navy had considered, and rejected, in its proposal. GSA was not required to undertake a full-blown cost-benefit analysis of whether it would have been economically feasible for the Navy to acquire the adjacent VDOT site or relocate its parking facility to a nearby residential area, thereby "freeing up" its occupation of the Barracks K property. Similarly, GSA was not obligated to determine whether it would have been feasible to require Navy employees who park their cars in the Barracks K lot to switch to public transportation. These "alternatives," and their underlying facts,[6] were a factor in this unique case only because Barracks K was not truly "excess" property, as the McKinney Act contemplates. Barracks K was, in fact, already fully utilized.

This Court has already noted that GSA, in informing HUD (and HHS and CHS) that it did not anticipate "any limitations in the use of this Property to assist the homeless," is largely responsible for the "false hope" and "unconscionable treatment" shown to intervenors in this case. Mem. of July 14, 1989, at 11–12. CHS members spent over 1,000 hours preparing their applications to obtain this property. Without question, however, Barracks K should never have been classified as "excess" federal property in the first place. If Barracks K had been properly transferred to the Navy years ago, the injustice to intervenors—and this litigation—would have been avoided. *See id.* at 12.

The Court need only remind defendants that the McKinney Act was intended to "use public resources and programs in a more coordinated manner to meet the critically urgent needs of the homeless of the Nation." 42 U.S.C. § 11301(b)(2). The course of events leading to GSA's decision reflects, at the very least, a dire lack of coordination among the federal agencies entrusted to carry out the Act. In the final analysis, however, the Court will not judge the merits of this case by reference to the unfortunate fact that GSA, prior to its decision, led intervenors down the "primrose path." Mem. of July 14, 1989, at 11. In

reviewing GSA's decision under the APA, the function of this Court is to "review administrative action for compliance with applicable law, nothing more." *San Luis Obispo,* 751 F.2d at 1327. GSA's decision comported with the letter of the McKinney Act. GSA adequately weighed the competing uses of the property and concluded that the Navy's needs were paramount. That conclusion was rationally based on the record. Accordingly, the Court upholds GSA's decision.

### ORDER

Upon consideration of defendants' motion for protective order and motion for summary judgment, plaintiff-intervenors' Rule 56(f) request for continuance or further discovery, the arguments of counsel in open Court, and for the reasons set forth in the accompanying Memorandum, it is by the Court this 20th day of April, 1990,

ORDERED that defendants' motion for summary judgment be, and hereby is granted; and it is accordingly

ORDERED that defendants' motion for protective order be, and hereby is, granted, and that plaintiffs' Rule 56(f) request for continuance or further discovery be, and hereby is, denied.

---

**6.** One such "underlying fact" is the appraisal value of the property. Barracks K's appraisal value would be relevant to GSA's decision only

if GSA were required to scrutinize the alternatives already considered, and rejected, by the Navy.